946 So.2d 369 (2006)
Clifton D. MAJORS a/k/a Cliff, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-CA-00692-COA.
Court of Appeals of Mississippi.
March 28, 2006.
Rehearing Denied August 29, 2006.
Certiorari Denied January 4, 2007.
*370 Julie Ann Epps, Jackson, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
IRVING, J., for the Court.
¶ 1. Clifton Majors appeals from a judgment of the Circuit Court of Marion County, summarily dismissing his motion for post-conviction relief. He argues that the court erred in dismissing his motion, because it applied an incorrect legal standard, i.e., the court based the dismissal "solely on the fact that [he] had signed a guilty plea petition and stated at the time of the plea that his attorney was ineffective."
¶ 2. We find no merit in Majors's argument; therefore, we affirm the decision of the trial court.

FACTS
¶ 3. On March 13, 2001, Clifton Majors executed a sworn "Petition to Enter Guilty Plea"[1] wherein he stated that he wished to plead guilty to the crime of robbery. The petition also contained the following statement: "I plead guilty and request the court to accept my plea of guilty and I have entered my plea of guilty on the basis of my following involvement in the crime: *371 I was with some others to rob a store and I participated."
¶ 4. On the same day that Majors executed his guilty plea petition, the trial court held a plea qualification hearing. At the beginning of the hearing, the following exchanged occurred between the court, Majors, and Timothy:
Q. All right. And, Clifton, in the petition you signed, did you read it?
A. (CLIFTON MAJORS) Yes, sir.
Q. You understand it?
A. (CLIFTON MAJORS) Yes, sir.
Q. And you swore before Mr. Leslie Wilson, the Circuit Clerk here in Lamar County, that you did understand what was in the petition and whatever information you put in it was true and correct; is that right?
A. (CLIFTON MAJORS) Yes, sir.
¶ 5. Later in the hearing, Majors denied that he was at the scene of the robbery. The court then asked why he wanted to plead guilty if he was not at the scene of the robbery. Majors answered, "I am stuck between a rock and a hard place." He later explained that his role was helping "Scotty [his brother] when he came to me and wanted it."
¶ 6. Before accepting Majors' plea, the court asked the State for a factual predicate, and the State responded:
MS. SONES (THE PROSECUTOR):
The original statement that was given by Timothy Scott Majors was that he and his brother had gone tohad robbed Crossroads Grocery. And after giving the initial statement then Timothy Majors decided to change his mind and he came up with two other names, Tory Longino and a black male named Smurf. It would be the testimony of Paul Deen having already been questioned about this under oath that the three of them, Clifton Majors, Paul Deen and Timothy Scott Majors, all went to the Crossroads Grocery. They had talked about it ahead of time. The two who went into the store would have been Timothy Majors, Clifton was the driver of the vehicle who operated as the look out for the robbery. The two of them went in with the masks on and then Timothy Scott Majors was shot by Mr. Herrington in the back[2]. Once they left the Crossroads Grocery, they drove, Cliff Majors was still the driver. And then Mr. Herrington came out after them. They left and went to some other individuals homes, who attempted to get the bullet out. One of thoseJudge, give me just a minute. There are a bunch of different crimes all in the same file and I'm trying to just sort out this part.
* * * *
MS. SONES: I did want to add one thing. There's a statement in our file from Misty Nobles, who stated that they had all been together earlier.
THE COURT: Wait a minute. Who is Mr. Nobles?
MS. SONES: Misty Nobles. She said she, Cory Longino, Clifton Majors, Scotty Majors and Paul Deen and her two children checked into the Budget Inn in Hattiesburg about eleven o'clock a.m. The next day Scotty, Clifton and Paul left in a new Escort which matches the description of the vehicle involved in the robbery, about 8:00 p.m. They came back, Scotty had been shot. [She] asked them what happened.
THE COURT: Wait. Is her statement that Timothy and Clifton left?

*372 MS. SONES: Yes. All three of them left and when they came back that Timothy had been shot. [She] asked them what happened, they told her not to worry. And then she cleaned up the wound. So during the period of time that they left and the time they came back, he had been shot, the three of them left together and came back together.
¶ 7. Prior to the State's informing the court about Nobles's testimony, Majors said to the court, "Your Honor, I had part in, they said they were going to the store." Following this admission by Majors (and before the prosecutor informed the court about Nobles's testimony), the following exchange occurred:
BY THE COURT:
Q. But you deny you were driving the car as Paul Deen said?
A. (CLIFTON MAJORS) I have to tell you truth. I tell, you know.
Q. All right [sic]. Well, let me ask you this: I'm sure Mr. Agnew, you know, Paul Deen, probably seen his statement. You knew him, do you not [sic]?
A. (CLIFTON MAJORS) Yes, sir.
* * * *
Q. Now, what's best of your knowledge before would be what, they came to you and told they were going to go rob the store, Clifton?
A. (CLIFTON MAJORS) Yes, sir.
Q. And did they get anything from you like masks, guns or anything?
A. (CLIFTON MAJORS) No, sir.
Q. All right. And once they told you that, your testimony to the jury would be that you didn't go with them?
A. (CLIFTON MAJORS) Yes, sir.
Q. But then immediately when they came back and your brother was shot, you did help him at that point?
A. (CLIFTON MAJORS) Yes, sir.
Q. Now, then Paul Deen gets on the stand and says that's not exactly true, he went with us, drove the car, so forth and so on, you understand what the jury believes?
A. (CLIFTON MAJORS) Yes, sir.
Q. And if the jury chose to believe him they would have the proof sufficient to convict you. Do you agree with that?
A. (CLIFTON MAJORS) Yes, sir.
Q. And, Timothy, you know, whether you testified or not, again, would be your right. Do you understand your right not to and your right to?
A. (TIMOTHY MAJORS) Yes, sir.
Q. But would your testimony be more in line with Paul Deen's or
A. (TIMOTHY MAJORS) No, sir.
Q. So the jury would have two of y'all to decide whether they believed y'all. I guess this Smurf person hasn't been found. Nobody knows who he is. So I guess when we went to trial as far as the people who were suppose [sic] to be there would be the two of y'all and Paul Deen?
A. (TIMOTHY MAJORS) Yes, sir.
Q. I don't know who the jury would believe.
A. (CLIFTON MAJORS) I don't know either, sir. I think it would be in my best interest just to enter a plea.
¶ 8. Following the above exchange, the court inquired of Majors: "Is that your desire, Clifton, what you've done to enter a plea of guilty in your own best interest and youif the jury was to believe Paul Deen and whatever facts the State could prove *373 in this matter they would have enough evidence to prove this case beyond a reasonable doubt, Clifton?" Majors answered, "I do."

STANDARD OF REVIEW
¶ 9. Our standard of review of a trial court's denial of post-conviction relief is clear. "When reviewing a lower court's decision to deny a petition for post-conviction relief, we will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised, the applicable standard of review is de novo." Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999) (citing Bank of Miss. v. S. Mem'l Park, Inc., 677 So.2d 186, 191 (Miss.1996)).

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 10. Majors argues that the circuit court erred in summarily dismissing his motion for post-conviction relief pursuant to Mississippi Code Annotated section 99-39-11(2).[3] Majors contends that his guilty plea was not knowingly and voluntarily entered because of his trial counsel's ineffective representation. More specifically, Majors contends that he was never allowed to review any of the discovery in the case, and was falsely told that his brother had signed a confession which would have aided in his conviction. According to Majors, his counsel was deficient in failing to discover that his brother's signature on the confession was forged. Majors further alleges that his counsel was deficient in failing to discover a witness who had information that was of an exculpatory nature. Therefore, Majors concludes that he should have been afforded an evidentiary hearing to further demonstrate how he was prejudiced by his counsel's ineffective representation.
¶ 11. We first address Majors's claim that if he had known that the confession obtained by the police was "bogus," and that there was an eyewitness who could have supported his assertion that he was not a participant in the crime, he would not have pleaded guilty and would have insisted on going to trial.[4] Although not stated as such in his brief, we assume that Majors is alleging that these discoveries would qualify as newly discovered evidence.
¶ 12. Newly discovered evidence is relevant only in situations where a defendant goes to trial and is convicted. "To succeed on a motion for a new trial based on newly discovered evidence, the petitioner must prove that new evidence has been discovered since the close of trial and that it could not have been discovered through due diligence before the trial began." Crawford v. State, 867 So.2d 196, 203-04(¶ 9) (Miss.2003) (citing Meeks v. State, 781 So.2d 109, 112(¶ 8) (Miss.2001)). Additionally, "the petitioner must show that the *374 newly discovered evidence will produce a different result or induce a different verdict, if a new trial is granted." Id. Here, Majors did not stand trial because he admitted that he had committed the offense by pleading guilty. Therefore, Majors cannot now claim that he has newly discovered evidence which would have "produced a different result" because his guilty plea essentially nullifies any argument that there is some undiscovered evidence which could prove his innocence.
¶ 13. Accordingly, we limit any further discussion to Majors's contention that his guilty plea was unknowing, involuntary, and brought about by ineffective assistance of counsel. In resolving this issue, we separately address the voluntariness of Majors's guilty plea and his claim of ineffective assistance of counsel.
¶ 14. In order to establish a claim of ineffective assistance of counsel, Majors must meet the two-pronged test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). According to the test, Majors must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Majors has the burden of proving both prongs of the Strickland test. Id.
¶ 15. Our review of the record reveals that Majors has failed to establish either element of the Strickland test. However, even if his attorney's performance could be considered deficient for failure to do what Majors alleges, we find that Majors still has not demonstrated the requisite showing of prejudice to support his ineffective assistance of counsel claim. The second prong of the Strickland test requires Majors to show that but for the errors of his counsel the result of the case would have been different. The record is simply void of any evidence to support such a contention. In fact, the record reflects that Majors was ably assisted by his counsel. While Majors ultimately received a sentence of twenty years, with ten years suspended and five years of probation, for the charge to which he pleaded, he could have received a life sentence, without the possibility of parole or a reduction in sentence, if he had gone to trial and was found guilty. In addition, his counsel was able to get other pending felony charges passed to the files in exchange for his guilty plea. Clearly, it was because of his counsel's successful negotiations that Majors was able to escape a possible life sentence. "Assertions of error without prejudice do not trigger reversal." Nicholson ex rel. Gollott v. State, 672 So.2d 744, 751 (Miss.1996) (citing Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993) (overruled on other grounds)).
¶ 16. Moreover, the primary thrust of Majors's arguments on this point of error is that his counsel was ineffective because he failed to discover a potential defense. Specifically he argues that "[a]n un-conflicted, reasonably competent attorney would have investigated and discovered that Scott's confession, the principal evidence against Majors, was forged." Majors further argues that he would not have entered a guilty plea if he had realized that he had a viable defense to his brother's so-called confession. However, no matter whether the confession was forged or not, we fail to see how the alleged failures of his counsel caused him to plead guilty. It is uncontroverted that Majors knew, before he finally pleaded guilty, that his brother had recanted his alleged confession that Majors was involved in the crime. The passages quoted above from the plea qualification hearing are irrefutable evidence that when Majors entered his *375 plea, he knew his brother would testify that Majors was not involved in the robbery and was not driving the getaway car.
¶ 17. In addition, Majors's ineffective assistance of counsel claim is belied by the record. During the plea qualification hearing, Majors was asked by the court if he was completely satisfied with the services his attorney had rendered to him, to which he answered, "Yes, sir." The court also asked Majors if his attorney had done anything that Majors felt his attorney should not have done; he responded by saying, "No, sir." The court went on to ask Majors if his attorney had failed to do anything that he believed his attorney should have done. His response to the court indicated that Majors believed that his attorney had not failed him in any way. Therefore, this issue is without merit.
¶ 18. Although we have found that Majors's counsel was not ineffective, we briefly address the voluntariness of Majors's guilty plea. When reviewing the voluntariness of a guilty plea, we will not reverse unless the findings of the trial court are clearly erroneous. House v. State, 754 So.2d 1147, 1152(¶ 24) (Miss. 1999) (citing Schmitt v. State, 560 So.2d 148, 151 (Miss.1990)). The burden is on Majors to prove that his guilty plea was involuntary. Miss.Code Ann. § 99-39-23(7) (Rev.2000). Therefore, if Majors is able to prove that his plea was involuntary, then we must find that his guilty plea is not binding on him.
¶ 19. A plea is voluntary when "the defendant is advised concerning the nature of the charge against him and the consequences of the plea." Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992) (citing Wilson v. State, 577 So.2d 394, 396-97 (Miss.1991)). Mississippi law also provides that in order for a plea to be voluntary, the accused must understand the nature and consequences of the plea, and the maximum and minimum penalties provided by law. URCCC 8.04(A)(4)(b). The trial court is also required to determine whether "the accused is competent to understand the nature of the charge." Id. at 8.04(A)(4)(a). Additionally, the defendant must be apprised of several constitutional rights, which the defendant must knowingly waive: "the defendant must be told that a guilty plea involves a waiver of the right to a trial by jury, the right to confront adverse witnesses, and the right to protect against self-incrimination." Alexander, 605 So.2d at 1172 (citing Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).
¶ 20. After reviewing the transcript of the plea hearing, we find that the trial judge was correct in finding that Majors's guilty plea was voluntarily and knowingly made. The trial court clearly informed Majors that he had the right to a trial by jury, had the right to cross-examine witnesses against him, and had the right against self-incrimination. The court made sure that Majors knew that he was waiving those and other constitutional rights by deciding to enter a guilty plea. The court also informed Majors of the minimum and maximum sentences for the charge he was pleading to. Majors stated that he understood those sentences. The court also conducted an examination into Majors's competence, inquiring about his level of education, ability to read and write, lack of intoxication, and understanding of the charges against him. Majors specifically told the court that it would be in his best interest to enter a guilty plea, and that he was entering his plea voluntarily, free from any threats, coercion, or intimidation.
¶ 21. For the reasons discussed, we find that the trial judge did not err in summarily *376 dismissing Majors's motion for post-conviction relief.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY DENYING MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Two other individuals, Timothy Scott Majors (Clifton Majors's brother) and Paul Deen, were also charged with robbing Crossroads Grocery in Marion County. Timothy pleaded guilty at the same time as his brother, and Deen pleaded guilty later.
[2] Herrington was the owner of Crossroads Grocery.
[3] Mississippi Code Annotated section 99-39-11(2) (Rev.2000) states: "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified."
[4] In support of his motion for post-conviction relief, Majors attached a report from a forensic document examiner who stated that the signature on the confession could not be associated with that of his brother. According to Majors, this was sufficient proof that the confession was "bogus." Additionally, Majors points to a letter from an eyewitness to the crime as proof that he was not involved in the crime. The eyewitness wrote that he noticed that the driver of the getaway car was black. This piece of information was important because Majors, a white male, was said to be the driver of the get away car during the robbery.