SIXTH DIVISION
May 4, 2007

No. 1-05-3172

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 08691-03 |
| | ) | |
| WAYNE BARNSLATER, | ) | Honorable |
| | ) | Christopher Donnelly, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Defendant, Wayne Barnslater, appeals from the circuit court's grant of the State's motion to dismiss his postconviction petition at the second stage of postconviction review. On appeal, he contends that he made the necessary substantial showing of a freestanding claim of actual innocence of the aggravated criminal sexual assault to which he pled guilty so as to preclude his petition's dismissal. He further argues that the circuit court erred in rejecting his petition's challenge to the voluntariness of his plea, even if *res judicata* applied, since fundamental fairness would mandate the relaxation of that procedural bar where the plea was obtained by a threat from his own counsel. We affirm.

## FACTUAL BACKGROUND

The State charged defendant with, among other charges, aggravated kidnaping and aggravated criminal sexual assault, in a 68-count indictment on March 9, 1999. The charges stemmed from an alleged incident involving defendant, two codefendants, and 19-year-old Y.B.

1-05-3172

On December 22, 1999, defendant took part in a Supreme Court Rule 402 (177 Ill. 2d R. 402) conference with the State and the circuit court. At the conclusion of that hearing, the circuit court stated:

"My understanding is the plea of guilty would be to *** two counts of aggravated criminal sexual assault, one count of aggravated kidnaping.

I indicated the State is recommending that I sentence the defendant to a period of six years Illinois Department of Corrections as to the aggravated criminal sexual assault count involving vaginal intercourse and also to six years Illinois Department of Corrections on the one alleging contact, mouth to the penis, and that pursuant to the statute that these sentences be made consecutive, so he'd be serving a period of 12 years.

The aggravated kidnaping count would merge into the counts as it is a predicate offense to the aggravated criminal sexual assault counts.

The other counts would be nolle prossed pursuant to the plea agreement."

Following the hearing, defendant pled guilty to those two counts of aggravated criminal sexual assault and one count of aggravated kidnaping.

Following a colloquy between the circuit court and defendant in which defendant stated that he "was not threatened in any way in order for [him] to plead guilty," the State presented the factual basis for defendant's plea. The prosecutor stated:

"If this case were to go to trial, the evidence would show that on March 9, 1999, at approximately between the hours of seven p.m. and

-2-

10:11 p.m., at the address of 490 Madison, Calumet City, Cook County, the State of Illinois, the residence of Wayne Barnslater, that [Y.B.], the victim, went over there with Joe Michael Clemmons and David Jackson, codefendants, under the ruse to baby-sit.

When she arrived there, the three defendants and her were sitting around drinking. The defendant, Mr. Barnslater, had a fifth of gin. He poured about three to four shots worth of gin and 7-Up in a glass and [Y.B.] drank it straight down.

After approximately 20 minutes, she was in the kitchen using the phone. They had been talking about having sex. The defendant, Mr. Barnslater, went into the kitchen where she was on the phone, pulled down his pants showing her his penis. She laughed. He walked out of the room.

At that time shortly thereafter, she went into the bedroom, and fell asleep in the bed. He went into the bedroom, saw one of the codefendants having sex with her. She was moaning as in a drunken stupor. Subsequently the defendant then placed his penis in her mouth while the other individual was having vaginal intercourse with her. Mr. Barnslater did the oral intercourse at that time.

Subsequently, after the others were done, the defendant went back placed his penis in her vagina. When she was still unresponsive, he left it in her for approximately a minute or so, and when she was unresponsive,

he then pulled it out and left the room.

During this time the police had come to the door along with the victim's mother asking for the victim. The defendant answered the door indicating she was not there.

However, later when the police came back, he indicated she, in fact, was there, and that she was unconscious in the bedroom. The officer went in. She was transported to St. Margaret's Hospital where it was learned that she had a blood alcohol content of .264, in her system at that time.

During the acts of intercourse, she would testify that she was unable and unwilling to give consent or unknowing [sic] due to the fact that she was under the influence of alcohol."

Defense counsel stipulated to the State's proffered factual basis for the plea.

On January 20, 2000, defendant moved to withdraw his guilty plea. He alleged that defense counsel and the State worked together to convince him to plead guilty in spite of insufficient evidence to prove his guilt. While never averring that he did not have sex with Y.B. while she was intoxicated, he contended that she never complained of being kidnaped and that he did not force her to drink. According to defendant, in this motion, Y.B. went to his bedroom voluntarily with a friend of his. In a supplement to his motion to withdraw his plea, filed on March 20, defendant further alleged, among other things, that he was "denied the right to a fair trial" because defense counsel told him to plead guilty and accept a 12-year sentence because, if

he did not, in light of his criminal history, he would receive a 20-year sentence. The circuit court denied the motion, after a hearing, on June 19, 2000.

Subsequently, defendant made a direct appeal asserting, among other things, that his attorney was ineffective for counseling him to plead guilty on account of his criminal history when the attorney misattributed to him a conviction of a different person bearing the same name as he. He further argued that counsel compelled him to plead guilty through misrepresenting his criminal history and, thereby, rendered his plea involuntary. However, this court affirmed, noting that defendant's true criminal record was so extensive that counsel's representation of the additional "phantom" was not so material as to render his plea involuntary, and also observing that defense counsel had negotiated for the statutory minimum sentences on the charges for which defendant would be sentenced, and that their consecutive service was also mandated by statute.

On June 18, 2002, defendant filed a *pro se* postconviction petition. Therein, he made a "freestanding claim of innocence, as a result of newly discovered evidence." In support of his claim he attached his own affidavit in which he criticized defense counsel for "only repeatedly insist[ing] he accept the plea, because the judge [was] going to give [him] a considerable amount of time." He also attached the affidavit of Y.B. in which she stated:

> "Mr. Barnslater on the night of March 9, 1999, did not sexually
> assault me ([Y.B.]) in any way, form or fashion nor was I held against my
> will. No one at that residence forced me to drink. My alcohol
> consumption was of my choice.

I was intoxicated and coerced into making accusations that was not

the truth against Mr. Barnslater."

Subsequently, on September 3, in a *pro se* motion to amend his *pro se* petition, defendant attached an unsworn letter addressed "to whom it may concern," from attorney Roger L. Brown. In his letter, dated August 21, 2002, attorney Brown stated:

"Please be advised that I personally interviewed Ms. [Y.B.] on

August 19, 2002. At that meeting, she informed me that Mr. Wayne

Barnslatter [sic] did not sexually assault her. When I queried as to why

she had not come forth with this information sooner, and why, according

to the attached affidavit, she felt she had been 'coerced into making

accusations that were not the truth against Mr. Barnslater,' Ms. Y.B.

indicated her mother was the force controlling the charges which were

b[r]ought. She stated told me that she had really no say in how the charges

were b[r]ought and that her mother controlled the entire situation. But she

did state without hesitation that Mr. Barnslatter [sic] did not sexually

assault her."

Defendant's *pro se* petition survived the first stage of review. The public defender, appointed to represent defendant under the Post-Conviction Hearing Act (725 ILCS 5/122-1, *et seq.* (West 2002)), filed defendant's supplemental postconviction petition on September 24, 2004. In the body of the supplemental petition, defendant exclusively premised his relief on his freestanding claim of actual innocence based on newly discovered evidence. The petition did not

purport to attack the voluntariness of his plea or the performance of counsel. In support of his contention that the recantation evidence presented was "newly discovered," defendant alleged:

"[Y.B.] was the State's witness. She was within their control and influence. Her personal testimony was not of record, their [sic] was a stipulation to the evidence to be submitted for purposes of the plea. The evidence submitted to the court for the plea was based on testimony submitted by the State's Attorney regarding what they would have been presented [sic] had the case went to trial.

Due to the stipulation the [trial] attorney was unable to cross examine the truth or veracity of the statements read into the record by opposing Counsel, and unfortunately there was no way to ascertain that Ms. Y.B.'s testimony was coerced, but for her affidavit."

As evidentiary support for the supplemental petition, defendant again attached Y.B.'s affidavit, as well as attorney Brown's letter. Defendant also attached an affidavit from his father, plus his own affidavit in which he expanded on the allegations he made in his affidavit in support of his *pro se* petition.

Defendant's father, in his affidavit, averred that he was present in court on the day that defendant pled guilty. According to defendant's father:

"It was obvious that his plea was not voluntary. He hesitated several times when asked if his plea was forced, and I observed his attorney nudge him with his elbow to get him to respond to the Judge's

questions.

***  After pleading guilty before the Judge, Wayne immediately began proceeding to withdraw his plea.  He stated he plead guilty because his attorney informed him that his chances of winning were slim and that he would be sentenced to a longer period of time if he did not plead guilty."

According to defendant, in his expanded affidavit, he and his attorney had a "bullpen" conference where counsel "repeatedly insisted that [he] enter a plea agreement."  Defendant alleged that counsel "stated because of [his] extended criminal history [that] the plea agreement was the best thing" for him and that, if he did not take the plea, "the judge was going to give [him] a considerable amount of time, because of [his] background" and because he had violated his sentence of probation previously imposed by the presiding judge.  Defendant averred that he informed his counsel that he "did not do anything," but that counsel replied "it [did] not matter because of the allegations made against [him] and [because] the judge was mad cause [he] violated [the judge's previously imposed sentence] of probation."  Defendant concluded that he "was coerced and pressured into accepting the plea agreement, afraid of what may have happened whether I was innocent or not."

On May 20, 2005, the State moved to dismiss defendant's postconviction petition.  With respect to the explicitly raised contention of factual innocence demonstrated by newly discovered evidence, the State contended that defendant's "newly discovered evidence" did not establish innocence in that Y.B.'s affidavit did not dispel the original contention that she was intoxicated

and, therefore, incapable of giving consent at a time when defendant engaged in intercourse with her. The State additionally perceived defendant to have raised an issue surrounding the voluntariness of his plea and a claim of ineffective assistance of counsel in his petition. The State argued that those issues were barred from postconviction review on grounds of *res judicata* because they had previously been addressed on direct appeal.

At a hearing on the motion to dismiss, the State and defendant appeared to agree that Y.B. was unconscious at the time sexual acts were alleged to have been committed upon her. The State used that fact to reemphasize that Y.B.'s affidavit did nothing to undermine the element of her lack of consent. Defendant, on the other hand, argued "if she was unconscious *** how could she verify that [defendant] had sex with her. And the thing is someone would have to testify that that act took place." Defendant further argued at the hearing, with respect to the voluntariness of his plea, "that he did not want to plead, that he pled because he *** felt he had to plea; but once he found out that there was a lot of evidence out there that would support his position, he decided that he was going to continue to fight for this."

In granting the State's motion to dismiss defendant's postconviction petition, the circuit court stated that it perceived any ineffective assistance claims or claims surrounding the voluntariness of defendant's plea to be barred by *res judicata*. However, the court also found the petition deficient on its merits. The court observed:

> "Regarding the newly discovered evidence, it's readily apparent
>
> that the complaining witness *** as was placed into the plea, that the
>
> victim was not really conscious at the time anyway.

1-05-3172

That his guilt is not based simply on her testimony but on others['] as well. This is not newly discovered evidence that she is not aware of whether the defendant assaulted her or not. That's not what is at issue. That there are other witnesses who can provide the State with proof beyond a reasonable doubt that the defendant is guilty of crimes as charged.

Therefore, your motion to dismiss the PC [postconviction petition] will be granted."

Defendant appeals.

ANALYSIS

On appeal, defendant contends that the circuit court erred in dismissing his freestanding claim of actual innocence based on newly discovered evidence by concluding that the information contained in Y.B.'s affidavit was not "newly discovered." He argues that Y.B.'s averments demonstrated that she was under the control and domination of her mother and, therefore, that defendant could not have previously obtained her exculpatory statements. Defendant further argues that the circuit court's conclusion that his new evidence was immaterial since witnesses other than Y.B. could have established his guilt beyond a reasonable doubt amounted to an impermissible assessment of credibility as between Y.B. and those other witnesses. Defendant's second contention is that the circuit court erred in dismissing his claim surrounding the voluntariness of his guilty plea on grounds of *res judicata*. He argues that, even if raised before, we should grant him relief from the effect of his counsel's coercion on grounds

of fundamental fairness. We, however, disagree with defendant's contentions.

In the review of a first or second-stage postconviction petition "all well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient." People v. Rissley, 206 Ill. 2d 403, 412 (2003). Additionally, we will not credit allegations positively rebutted by the record. See People v. Phyfiher, 361 Ill. App. 3d 881, 883-84 (2005) ("Under first-stage procedure, as provided by section 122-2.1, or under second-stage procedure, as provided by section 122-5, the circuit court is foreclosed from engaging in any fact-finding because all well-pleaded facts *not rebutted by the record* are to be taken as true at stage one and stage two of the post-conviction process" (emphasis added)). We review the grant of the State's motion to dismiss a postconviction petition *de novo*. People v. Pendleton, 223 Ill. 2d 458, 473 (2006).

The wrongful conviction of an innocent person violates due process under the Illinois Constitution and, thus, a freestanding claim of actual innocence is cognizable under the Post-Conviction Hearing Act. See People v. Washington, 171 Ill. 2d 475, 489 (1996). To obtain relief under the general framework surrounding newly discovered evidence establishing actual innocence, defendant would have to present evidence that " 'appear[s] to be of such a conclusive character that it [would] probably change the result if a new trial [were] granted' " (People v. Jones, 26 Ill. App. 3d 78, 82 (1975), quoting People v. Silvia, 389 Ill. 346, 352 (1945)); likewise, to survive a motion to dismiss, and to be entitled to an evidentiary hearing under the Act, a petitioner must make a "substantial showing" of the deprivation of a constitutional right (see People v. Simpson, 204 Ill. 2d 536, 546-47 (2001)), in this case a deprivation of due process

through continued incarceration in spite of actual innocence. However, for the reasons discussed below, we affirm the dismissal of defendant's postconviction petition because defendant's proffered evidence achieves neither.

As previously noted, defendant's conviction for aggravated criminal sexual assault, as opposed to simple criminal sexual assault, was based on the assault being committed during the commission of an aggravated kidnaping. Defendant appears to argue that, since the averments of Y.B.'s affidavit to the effect that she willingly came to defendant's home and drank voluntarily undercut the necessary elements of kidnaping, he is, therefore, "actually innocent" of aggravated criminal sexual assault. In so doing, he fails to acknowledge the distinction between being found "not guilty" and being "actually innocent" for purposes of postconviction relief.

In People v. Savory, 309 Ill. App. 3d 408 (1999), the court addressed a statute allowing for postconviction DNA testing of evidence where the testing had the "potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence" (725 ILCS 5/116–3 (West 1998)). In assessing the meaning of "actual innocence," the court observed that "actual innocence" did not concern whether a defendant had been proved guilty beyond a reasonable doubt. Savory, 309 Ill. App. 3d at 414. Rather, the Savory court concluded, "actual innocence" meant "total vindication," or "exoneration." Savory, 309 Ill. App. 3d at 414-15.[1] See

---

[1] The appellate decision in Savory was criticized by another division of the appellate court and by our supreme court in its decision nevertheless affirming the Savory appellate court's judgment. See People v. Savory, 197 Ill. 2d 203 (2001); People v. Rokita, 316 Ill. App. 3d 292 (2000). However, the basis of the criticism was that the Savory appellate decision assumed that,

1-05-3172

also <u>People v. Lamming</u>, 358 Ill. App. 3d 1153, 1155 (2005) ("postconviction [DNA] testing is predicated upon a claim of actual innocence. If a defendant does not deny committing the acts charged, there would be no reason to test for new evidence potentially relevant to the question of innocence"). The court in <u>Moore v. Owens</u>, 298 Ill. App. 3d 672 (1998), in the context of legal malpractice claims by criminal defendants, appeared to reach the same conclusion, stating:

> "We do not believe that even if a criminal defendant is acquitted on retrial, that alone will suffice as proof of innocence, although it may be evidence for a fact finder to consider. Rather, because of the different burdens of proof in a civil trial and a criminal trial, we believe that the plaintiff must also prove independently in the civil trial that he was actually innocent and 'not just lucky.' [Citation.]" <u>Moore</u>, 298 Ill. App. 3d at 675.

See also <u>Levine v. Kling</u>, 123 F.3d 580, 582 (7th Cir. 1997) ("an acquittal doesn't mean that the defendant did not commit the crime for which he was tried; all it means is that the government was not able to prove beyond a reasonable doubt that he committed it"); <u>Shaw v. State</u>, 861 P.2d

---

to permit defendants to obtain DNA testing, any DNA evidence acquired would have to be sufficient in and of itself to prove the defendants' actual innocence, whereas the statute only required that any requested DNA testing have "the potential" to produce evidence "materially relevant" to proving actual innocence. <u>Savory</u>, 197 Ill. 2d at 213; <u>Rokita</u>, 316 Ill. App. 3d at 301-02. No criticism, however, was directed at the <u>Savory</u> appellate decision's understanding of the meaning of "actual innocence."

-13-

1-05-3172

566, 570 n.3 (Alaska 1993) (drawing a distinction between "actual innocence" and "legal innocence"); Glenn v. Aiken, 409 Mass. 699, 709, 569 N.E.2d 783, 789 (1991) (Liacos, C.J., specially concurring) ("A criminal trial is an adjudication of a defendant's legal guilt. As a result, a jury's verdict does not address necessarily the issue of a defendant's actual guilt. Two examples suffice to make the point. A defendant who committed the crime may be acquitted if the jury, based on the evidence introduced by the prosecution, had a reasonable doubt as to the defendant's legal guilt. Or, alternatively, a defendant may be acquitted because evidence of guilt is suppressed due to it being tainted by some constitutional violation by law enforcement personnel").

Savory's and Moore's understanding of "actual innocence" is consistent with the understanding of those other jurisdictions which have held that actual innocence requires that a defendant be free of liability not only for the crime of conviction, but also of any related offenses. See Wanatee v. Ault, 120 F. Supp. 2d 784, 789 (N.D. Iowa 2000) ("there is a public interest in the continued incarceration of a person convicted of murder, where the grounds for *habeas* release did not go to his actual innocence, but only to a constitutional defect in his representation, which this court concluded resulted in his conviction of a greater offense, as opposed to his pleading guilty to a lesser offense with a lesser sentence"); Bailey v. Tucker, 533 Pa. 237, 247-48, 621 A.2d 108, 113 (1993) ("we require that as an element to a cause of action in trespass against a defense attorney whose dereliction was the sole proximate cause of the defendant's unlawful conviction, the defendant must prove that he is innocent of the crime or any lesser included offense. *** The underlying act for first degree murder and for voluntary manslaughter

-14-

is the unlawful taking of human life. A person convicted of unlawfully taking a human life may not collect monetary damages for being wrongfully convicted of first degree murder when in fact that person is guilty of a lesser degree of homicide"); Sangha v. LaBarbera, 146 Cal. App. 4th 79, 88, 52 Cal. Rptr. 3d 640, 647 (2006) (holding that to be "actually innocent" so as to recover for legal malpractice, a defendant must be free from "*any* criminal involvement," including the commission of a lesser included offense of the crime of conviction (emphasis in original)).

Throughout defendant's postconviction pleadings, as well as the plea proceedings, there is never a denial of the fact that Y.B.'s intoxication reached such a point that she lost the ability to consent to sexual intercourse. In fact, in his *pro se* motion to withdraw his plea, defendant stated that "the victim was drunk and could not say that she was forced to have sex." There was likewise agreement between defendant and the State at the hearing on the motion to dismiss the petition that, for some period of time, as a result of intoxication, Y.B. became unconscious in defendant's home.

Against this backdrop, defendant never denies engaging in any form of sexual relations with Y.B. In fact, defendant never sets out himself what occurred in his home during the relevant times. Defendant, likewise, fails to include any affidavits from the other men identified in the stipulated factual basis for his plea as taking part in the assault, or the unnamed friend he alleged went to his bedroom with Y.B. in his motion to withdraw his guilty plea, so as to establish that he never performed a sexual act on Y.B. at a time when she was incapable of giving consent thereto. See 720 ILCS 5/12-13(a)(2) (West 1998) ("The accused commits criminal sexual assault if he or she: *** commits an act of sexual penetration and the accused knew that the victim was

unable to understand the nature of the act or was unable to give knowing consent"); 720 ILCS 5/12-15(a)(2) (West 1998) ("The accused commits criminal sexual abuse if he or she: *** commits an act of sexual conduct and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent").

Of course, Y.B. herself avers that defendant "did not sexually assault [her] in any way, form or fashion." However, that statement carries with it the ambiguity of a legal conclusion, as opposed to a statement of specific facts contradicting or denying the facts supporting conviction. See Rissley, 206 Ill.2d at 412. We begin by noting that Y.B. does not state that no sexual acts took place that day and that, as the circuit court and postconviction counsel recognized, during her period of unconsciousness, Y.B. would not have known who might have perpetrated any sexual act upon her. Moreover, depending on what Y.B.'s understanding of "sexual assault" is, defendant could still be criminally culpable in spite of her statement. For example, if Y.B. believed that sexual assault only occurred in the event that the perpetrator applied physical force in order to engage in a sexual act with her, then she might say that she had not been sexually assaulted even though the law would recognize defendant as having committed an offense should he have performed some form of sexual act, including intercourse, through taking advantage of her severe intoxication and/or unconsciousness. See 720 ILCS 5/12-13(a)(2), 12-15(a)(2) (West 1998). Thus, it remains unclear whether Y.B. denies the facts present in the stipulated factual basis for defendant's plea that would support his conviction or if she merely concludes that those facts are legally insufficient to support the statutory definitions of such offenses as aggravated criminal sexual assault, simple criminal sexual assault, and criminal sexual abuse. See People v.

1-05-3172

Patel, 366 Ill. App. 3d 255, 271 (2006) ("statutory interpretation is not a matter to which an expert witness may testify"); People v. Sepka, 51 Ill. App. 3d 244, 259 (1977) ("a witness may not testify as to the legal effect of facts already in evidence").

Further, in any event, Y.B.'s recantation affidavit would merely impeach her stipulated testimony in the factual basis for the plea which the State, in all likelihood, would have been free to introduce as substantive evidence in the event of an actual trial. See 725 ILCS 5/115-10.1 (West 1998) (providing that a prior inconsistent statement is not made inadmissible under the hearsay rule if, among other things, it describes an event over which the witness had personal knowledge, and the witness's statement has been signed by the witness, acknowledged under oath in legal proceedings, or mechanically recorded). As the court recognized in People v. Chew, newly discovered evidence "which merely impeaches a witness" will typically not be of such conclusive character as to justify postconviction relief. People v. Chew, 160 Ill. App. 3d 1082, 1086 (1987). See also People v. Steidl, 177 Ill. 2d 239, 260 (1997) ("the recantation of testimony is regarded as inherently unreliable, and a court will not grant a new trial on that basis except in extraordinary circumstances"); McVey v. State, 863 N.E.2d 434, 446 (Ind. App. 2007) ("we find that [the victim's] first affidavit [recanting by stating '[the defendant] and I have never had sex with each other and he never touched me inappropriately'] would be used merely to impeach her trial testimony. Unlike [defendant], we do not conclude that the affidavit would destroy or obliterate the testimony upon which a conviction was obtained. [Citation.] Instead the affidavit would merely serve to cast doubt on [the victim's] trial testimony. As such, it would not destroy or obliterate her earlier testimony, but rather place her credibility at issue, a matter that is

-17-

1-05-3172

reserved for the jury").

Moreover, we cannot conclude that defendant's evidence would qualify as "newly discovered."  In this case, defendant would have to have known the underlying facts comprising what he presently identifies as "newly discovered evidence," plus alternative sources for the presentation of those facts which he could have drawn on prior to his plea, to demonstrate that Y.B.'s original accusations were false.

To qualify as "newly discovered evidence," the evidence must, among other things, " 'have been discovered since the trial. ' "  People v. Jones, 26 Ill. App. 3d 78, 82 (1975), quoting People v. Silvia, 389 Ill. 346, 352 (1945).  Usually, to qualify as new evidence, it is the facts comprising that evidence which must be new and undiscovered as of trial, in spite of the exercise of due diligence.  Generally, evidence is not "newly discovered" when it presents facts already known to the defendant at or prior to trial, though the source of those facts may have been unknown, unavailable, or uncooperative.  See People v. Moleterno, 254 Ill. App. 3d 615, 625 (1993) ("Like the witness in Jones, Perry here was initially uncooperative.  Like the information involved in Jones, the information at issue here, the color of the gun, was also within the knowledge of defendant.  He could have testified to this fact when he took the stand.  His wife could have testified to the color of the gun as she was the intermediary between her husband and Perry.  Perry could have been subpoenaed and asked the color and whereabouts of the gun.  In sum, the color of the gun cannot be considered 'newly discovered' "); Chew, 160 Ill. App. 3d at 1085 ("Based on questions asked of both the complainant and Officer Jones regarding drug sales at the Taylor Street address, it also appears that defendant knew about the evidence prior to trial;

-18-

thus we find no abuse of discretion in the trial court's refusal to grant the motion for new trial []" based on the defendant's submission of a newspaper article describing the address the robbery complainant testified he was on his way to at the time of the offense, so as to see a friend, as a " 'popular drug confectionary with a wide following' "); Anderson v. Commonwealth, 63 S.W.3d 135, 141-42 (Ky. 2001) ("It is by defendant's own admission that we know he had both reports in his possession before trial. The evidence the defense claims to be newly discovered is that the Commonwealth's Attorney deceitfully kept a witness [the doctor authoring the reports] from testifying. Even if true, this does not fit the definition of newly discovered evidence").

There does appear to be an exception to the general rule when a witness later recants, however. Courts have held that defendants will not be precluded from presenting a witness's recantation as newly discovered evidence, though they knew the witness to be perjuring himself or herself. See Archer v. State, 934 So. 2d 1187, 1194 (Fla. 2006) ("a recantation is not precluded from being considered newly discovered evidence simply because the defendant knew, as reflected by what the defendant claimed the facts to be, that the recanting witness was not telling the truth at the time of the trial or because the defendant took the stand to testify contrary to the witness"). But, this exception will not apply if the defendant had evidence available at the time of trial to demonstrate that the witness was lying. See Archer, 934 So. 2d at 1194 ("The appropriate question was whether [the defendant] was or should have been aware of the existence of evidence that would demonstrate that [the recanting witness's] testimony was false"); see also Jones, 26 Ill. App. 3d at 82-83 ("Both defendant and his lawyer knew that Long had made a statement favorable to them and that he was available for subpoena. *** The only change in the

situation from time of trial to time of motion [for new trial] was that the witness became more cooperative. His version of the occurrence did not change. This evidence was not newly discovered").

In this case, defendant had to have known of other sources of his presently proffered evidence of "actual innocence" at the time he pled guilty. Reduced to its material essence, defendant's newly discovered evidence is that he did not kidnap Y.B., nor sexually assault her, and that she lied to police when she claimed that he did. Of course, defendant would have known that Clemmons and Jackson, his codefendants, and one of whom is presumably the friend defendant referred to in his motion to withdraw his plea, could have testified to those facts. See People v. Smith, 341 Ill. App. 3d 530, 540 (2003) ("we fail to see how defendant could not have known of the existence of Edwards, his own codefendant, and the alleged testimony he could have provided"). Had defendant proceeded to trial, he could have used this evidence to demonstrate that Y.B.'s accusations were false. See Archer, 934 So. 2d at 1194.

Furthermore, we cannot conclude that defendant has met his burden of showing that Y.B.'s recantation could not have been discovered prior to his plea, provided he had exercised due diligence. See Jones, 26 Ill. App. 3d at 82, quoting Silvia, 389 Ill. at 352 (holding that "newly discovered evidence" must also " 'be such as could not have been discovered before the trial by the exercise of due diligence' "); People v. Harris, 154 Ill. App. 3d 308, 318 (1987) ("It is the applicant's burden to show that there has been no lack of due diligence on his part"). In fact, there is no showing of defendant ever attempting to obtain the evidence of her recanted testimony himself prior to pleading guilty. To counter our conclusion, defendant sets forth two arguments.

-20-

1-05-3172

First, as previously noted, in the body of his supplemental petition, defendant claims: "[Y.B.] was the State's witness. She was within their control and influence. *** [U]nfortunately, there was no way to ascertain that Ms. [Y.B.'s] testimony was coerced, but for her affidavit." However, we cannot accept this conclusory charge of unprofessionalism by the State's Attorney when it is unsupported by any specific facts demonstrating that the State secreted Y.B. from defendant or defense counsel. See Rissley, 206 Ill. 2d at 412 ("all well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient"); see also 134 Ill. 2d R. 3.4(a)(1) ("A lawyer shall not *** unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act"); 134 Ill. 2d R. 3.4(a)(3) ("A lawyer shall not *** request a person other than a client to refrain from voluntarily giving relevant information to another party ***"); United States v. Fred, No. CR 05-801 JB, slip op. at __ (D.N.M. December 4, 2006) ("As a general rule of criminal law, witnesses 'belong neither to the government nor the defense [, and b]oth sides have a right to interview witnesses before trial. [Citations.] Nevertheless, '[a] witness in a criminal case has the right to refuse to be interviewed,' ***. [Citation.] The witness' decision must be their own-the prosecutor must not obstruct communications between witnesses and defense counsel-and 'it is unprofessional conduct for the prosecutor to advise a prospective witness to decline to give the defense information that person has a right to give.' [Citations.]").

Defendant's second contention mirrors his first in that it identifies another party, namely

-21-

Y.B.'s mother, as blocking him from obtaining Y.B.'s recantation. In making this argument, defendant relies on attorney Brown's documentation of his conversation with Y.B. in which she "indicated her mother was the force controlling the charges which were b[r]ought," and that "her mother controlled the entire situation." Setting aside questions of waiver, considering that defendant never explicitly advanced this argument before the circuit court (Ayers v. Bituminous Insurance Co., 100 Ill. App. 3d 33, 36 (1981) ("Because the *** argument was not presented below, it has been waived")), we will not assume that Y.B., a 19-year-old woman, would not have recanted prior to defendant's plea where there is no indication that defense counsel even attempted to interview her. See Stocker v. Scherer, 1 Ill. 2d 405 (1953) (holding that a party failed to demonstrate due diligence where, knowing of a witness having certain information, he failed to interview that witness because the party believed the same information could be provided by other sources); see also Schlicht v. United States, No. CIV03-1606, slip op. at 2 (D. Ariz. January 30, 2006) ("due diligence assumes at least some level of deductive reasoning *in an active effort* to discover evidence based on the knowledge and information already possessed by the litigants" (emphasis added)); Bradley v. State, 450 So. 2d 173, 176 (Ala. Crim. App. 1983) ("The court found that the allegedly newly-discovered evidence did not constitute newly discovered evidence in that it was discoverable and available before trial. Of course, the evidence was the statement of the brother of the appellant accused of participating in the same crime. Appellant asks us to assume that he and his brother could not have communicated and that their lawyers could not have communicated before trial. We find this highly unlikely").

1-05-3172

Thus, it seems clear to us that defendant has failed to present conclusive evidence or to make a substantial showing of his actual innocence. Based on the allegations of the petition and supporting materials, even when construed liberally in defendant's favor, we cannot conclude that defendant, even if "not guilty" of aggravated criminal sexual assault predicated on aggravated kidnaping, is "actually innocent" of any crime against Y.B., including lesser included offenses of aggravated criminal sexual assault such as simple criminal sexual assault or criminal sexual abuse.

Independently of the foregoing analysis, and though not argued by any of the parties, we would strongly question whether a claim for relief under the Post-Conviction Hearing Act premised upon newly discovered evidence of actual innocence can suffice to raise a cognizable constitutional deprivation where the challenged conviction was entered pursuant to a plea of guilty. We believe that a defendant's postconviction claim of actual innocence cannot be deemed to deprive him of his due process rights in the face of the fact that the defendant previously confessed to the commission of the crime in his plea. Where the constitutional basis under which the Act is invoked rests upon a defendant's claim of actual innocence, there must be a substantial showing that his continued incarceration in the face of such evidence would violate his rights under due process. If a defendant claims that his guilty plea was coerced, then that coercion provides the necessary constitutional deprivation for which postconviction relief would be appropriate, but not where he claims actual innocence in the face of a prior, constitutionally valid confession of guilt.

This question does not appear to have been fully confronted in Illinois, but has been

-23-

specifically addressed in other jurisdictions. See Majors v. State, 946 So. 369, 373-74 (Miss. App. 2006) ("Newly discovered evidence is relevant only in situations where a defendant goes to trial and is convicted. *** Here, [the defendant] did not stand trial because he admitted that he had committed the offense by pleading guilty. Therefore, [the defendant] cannot now claim that he has newly discovered evidence which would have 'produced a different result' because his guilty plea essentially nullifies any argument that there is some undiscovered evidence which could prove his innocence"); accord Weeks v. Bowersox, 119 F.3d 1342, 1355-56 (8th Cir. 1997) (Loken, J., concurring) ("there is an inherent paradox in the notion that someone who has stood in open court and declared 'I am guilty,' may turn around years later and claim that he deserves to pass through the actual innocence gateway. Because a guilty plea waives the defendant's right to prove his actual innocence at trial, [citation.], a strong argument can be made that a guilty plea should absolutely foreclose a post-conviction claim of actual innocence ***. *** I conclude that the actual innocence inquiry in guilty plea cases must focus primarily on the guilty plea. Unless the habeas petitioner has newly-discovered evidence that his guilty plea was a false declaration of guilt, he should not pass through the actual innocence gateway").[2] But see Ex parte Brown, 205

---

[2] Since this particular argument would have no force in the case of a plea that did not admit guilt, such as an Alford plea, some courts do appear to allow postconviction challenges under those circumstances. See People v. Lundeen, 30 Ill. App. 3d 21 (1975) (allowing postconviction review where its defendant entered an Alford plea, voluntarily and knowingly accepting the imposition of a criminal penalty even while maintaining his factual innocence); Johnson v. State, 936 So. 2d 1196, 1197 (Fla. App. 2006) ("appellant will only be allowed to

S.W.3d 538, 544 n.8 (Tex. Crim. App. 2006) (holding "claims of actual innocence based upon newly discovered evidence are cognizable on post-conviction writs of habeas corpus" "regardless of whether the applicant pled guilty or had a jury trial" because where " 'new evidence unquestionably established an applicant's innocence, it is difficult to conclude that a prior guilty plea was accurate or reliable' [Citation.]").

Moreover, this approach is consistent with that taken, albeit without elaborate discussion, by Justice Schaefer, on behalf of our supreme court, in People v. Cannon, 46 Ill. 2d 319 (1970). In Cannon, our supreme court reviewed the denial of a defendant's postconviction petition subsequent to a guilty plea. In his petition, the Cannon defendant claimed that his charge of indecent liberties with a child was untrue, and that his children were coerced into accusing him, and precluded from asserting his innocence, by their mother, the defendant's wife. Cannon, 46 Ill. 2d at 321. In affirming the denial of the defendant's petition, our supreme court stated: "*Before his plea of guilty was accepted, the defendant, represented by appointed counsel, was fully and carefully admonished by the trial judge, and in the light of that admonition, the*

---

withdraw his plea upon a showing of manifest injustice. [Citations.] *** [A]ppellant does state in his motion that he was 'wrongfully convicted,' he has maintained his innocence throughout the proceedings, and he requested a new trial. The record also shows that appellant entered a plea of convenience. Thus, the substance of appellant's claim is one of manifest injustice"). But, defendant may not take advantage of this exception to the general rule because his plea was unconditional and because he stipulated to a factual basis that established his guilt of the crimes of conviction.

-25-

*defendant's present claim cannot be entertained*."  (Emphasis added).  Cannon, 46 Ill. 2d at 321.

We further note that the factual basis provided in support of a guilty plea generally provides a scant record on appeal.  See People v. Jamison, 197 Ill. 2d 135, 160 (2001), quoting People v. Barker, 83 Ill. 2d 319, 327-28 (1980) (" '[T]he quantum of proof necessary to establish a factual basis for the plea is less than that necessary to sustain a conviction after a full trial. [Citations.] All that is required to appear on the record is a basis from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which the defendant is pleading guilty. [Citations.]' "); accord People v. Ritchie, 25 Ill. App. 3d 875, 877 (1975). Consequently, a reviewing court is hampered in its ability to evaluate whether a defendant has made a substantial showing of a freestanding claim of actual innocence since it is deprived of the extensive evidence and exploration of issues that would have been contained in the record of an actual trial, and which may have overwhelmed any newly discovered evidence presented by the defendant in his postconviction petition.  See People v. Parsons, 284 Ill. App. 3d 1049, 1062 (1996) (rejecting a motion for a new trial based on newly discovered evidence, namely, the alleged admission of perjury by a complaining witness, and observing "Summit's supposed contradiction of her trial testimony, are not in the nature of conclusive evidence which, if believed, would probably change the result on retrial. [Citation.] *** [T]he evidence adduced at trial, independent of Summit's testimony, was sufficient by itself to support the defendant's conviction"); see also Lamming, 358 Ill. App. 3d at 1155-56 (addressing the analogous situation where a defendant seeks postconviction DNA testing in support of a claim of actual innocence, and stating:  "To be

entitled to DNA testing pursuant to section 116-3, a defendant must first present a *prima facie* case that identity was at issue at his trial ***. [Citation.] The plain and unambiguous language of the statute presupposes the existence of a trial and a conviction resulting from that trial. Without a trial, there is no way to satisfy the identity-at-issue requirement. * * * Because defendant pled guilty, he did not have a trial, he did not deny committing the acts charged, and identity was not at issue. The trial court, therefore, correctly denied defendant's postconviction motion for DNA testing"); Phyfiher, 361 Ill. App. 3d at 884 ("all well-pleaded facts not rebutted by the record are to be taken as true at stage one and stage two of the postconviction process").

We turn then to defendant's renewed attempt to vacate his guilty plea on the grounds that it was involuntary since it was entered in response to a threat from his own counsel. We first note that defendant concedes that this claim is barred by *res judicata* based on our holdings in his direct appeal. Relying on People v. Pitsonbarger, 205 Ill. 2d 444, 458 (2002), however, he contends that fundamental fairness requires that we relax this procedural bar. Defendant argues:

"[T]he new evidence establishes that Mr. Barnslater is not guilty

and he pled only for the reason he has repeatedly asserted. That is, he pled

guilty not because he was guilty, but pursuant to the threat of significantly

more prison time in the event he failed to so plead. Now it is known, as he

has always proclaimed, [that] he is innocent of the offenses charged.

Fundamental fairness requires consideration of his current claims."

Our supreme court has recognized "that, in the interests of fundamental fairness, the doctrine of *res judicata* can be relaxed if the defendant presents substantial new evidence."

-27-

1-05-3172

People v. Patterson, 192 Ill. 2d 93, 139 (2000).[3] The standards addressing when new evidence is sufficiently substantial so as to relax *res judicata* are the same standards used to determine whether newly discovered evidence should result in a new trial. See Patterson, 192 Ill. 2d at 139. Since we have already shown that defendant's new evidence could potentially have been discovered sooner through the exercise of due diligence and is not conclusive evidence of actual innocence, there is no basis on which to find that fundamental fairness requires the relaxation of *res judicata* here.

Moreover, even if not barred by *res judicata*, defendant's contention that his plea was coerced would be without merit. Defendant contends that

> "[his] guilty plea was the product of his attorney's threat that he
> would receive a longer sentence based upon his criminal record. 'A guilty

----

[3] Defendant suggests that we determine whether fundamental fairness requires us to relax the bar of *res judicata* by employing the cause and prejudice test under which a party must demonstrate an objective cause for his not raising the claim sooner, and prejudice, meaning an error so pervasive that the conviction ran afoul of due process. See People v. Morgan, 212 Ill. 2d 148, 153 (2004); People v. Mahaffey, 194 Ill. 2d 154, 173 (2000). In so doing, defendant mistakenly directs us to the test for evaluating whether it is appropriate to ease the application of the procedural bar of waiver, not *res judicata*. The bar of *res judicata* addresses the iniquity of a party seeking fresh review of an issue previously adjudicated; therefore, if *res judicata* is an applicable consideration, there will necessarily be no place for argument surrounding why a claim was not brought sooner.

plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack.' People v. Washington, 38 Ill. 2d 446, 450 (1967)."

However, multiple foreign authorities that we find persuasive have held against interpreting reasonable attorney advice as to possible sentences as a form of coercion.

For example, in Jones v. Estelle, 584 F.2d 687 (5th Cir. 1978), the Fifth Circuit addressed its *habeas corpus* petitioner's claim that "his attorney's impatience and stern demand for a quick answer, when added to the threat of a life sentence if the case went to trial, produced an involuntary plea." Jones, 584 F.2d at 690. The Fifth Circuit rejected its petitioner's claim, however, stating:

"These allegations are not sufficient for us to find that the plea was coerced. Trial counsel's irritation and impatience, although certainly not commendable, do not amount to mental coercion sufficient to overbear Jones' free will. Moreover, a plea is not involuntary solely because a defendant pleads guilty out of a desire to limit the possible penalty. [Citations.] To establish coercion Jones must show that the fear of the greater penalty destroyed his ability to weigh rationally, with aid of counsel, the advantages of proceeding to trial against those of pleading guilty. [Citation.] There has been no showing that petitioner's guilty plea was coerced." Jones, 584 F.2d at 690.

See also Rankins v. State, 839 So. 2d 581, 584 (Miss. App. 2003) ("Rankins argues that his plea

was not voluntarily or intelligently made because he was coerced by his counsel. Specifically, Rankins asserts his counsel induced him to plead guilty by telling him that if he did not take the plea bargain of eight years he could get the maximum sentence of thirty years. *** In regard to Rankin's impression that his attorney wrongly persuaded him to plead guilty, we find no suggestion that his attorney threatened or provided improper inducements. It is obvious that Rankins's attorney gave him only advice as to what the situation could entail if he did not plead. Advising a client of the possibility of receiving the maximum sentence if the case goes to trial is not a form of coercion"); Simons v. State, 719 S.W.2d 479, 481 (Mo. App. 1986) ("movant first argues that his counsel's advice of a possible 100-year sentence coerced him into an involuntary plea of guilty. *** For counsel to predict the possibility of a lengthy sentence following a jury trial does not amount to a coerced and involuntary plea").

Washington, the only Illinois case defendant cites to in support of his claim, does not mandate a different result. In Washington, our supreme court held a defendant's plea to not be voluntary where his counsel had misrepresented the punishment by falsely assuring him that it was agreed between himself, the circuit court, and the prosecution, that, in exchange for his guilty plea, he would receive a sentence of 14 years, but where the circuit court subsequently imposed a sentence of 25 years. Washington, 38 Ill. 2d at 450-51. Here, on the other hand, defendant makes no present claim that he was misled by his attorney, the court, or anyone else as to his possible sentence; he merely, incorrectly, contends that being informed by his counsel as to his possible sentence amounted to a "threat" from his counsel.

For all the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

FITZGERALD-SMITH, P.J., and McNULTY, J., concur.