2019 IL App (4th) 170090

NO. 4-17-0090

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DEMARIO D. REED, | ) | No. 14CF1205 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices DeArmond and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1       After an evidentiary hearing, the Macon County circuit court denied postconviction relief to defendant, Demario D. Reed, who is serving a prison sentence of 15 years for armed violence (720 ILCS 5/33A-2(a), 33A-3(a) (West 2014)). He appeals, arguing that newly discovered evidence he presented to the court in the postconviction hearing proved, clearly and convincingly, that he actually was innocent of armed violence despite his earlier negotiated guilty plea to that offense.

¶ 2       Because the validity of defendant's guilty plea is undisputed on appeal, we hold, *de novo*, that he remains bound by his guilty plea and that his claim of actual innocence cannot be entertained. See *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006); *People v. Cannon*, 46 Ill. 2d 319, 321 (1970). Therefore, we affirm the judgment.

¶ 3                          I. BACKGROUND

¶ 4     In count I of the information, the State alleged that on September 23, 2014, defendant committed armed violence in that while armed with a shotgun, he knowingly possessed cocaine (an amount less than 15 grams).

¶ 5     In April 2015, defendant appeared with appointed defense counsel, who announced:

>      "MR. WHEELER: Judge, the defendant is going to offer to enter a plea of guilty to Count I of [Macon County case No. 14-CF-]120[5], be sentenced to the Illinois Department of Corrections for a period of 15 years. *** The remaining charges [(in Macon County case Nos. 14-CF-903 and 14-CF-1206)] will be dismissed.

>      THE COURT: [Defendant], you heard what your attorney said. Is that your understanding of the plea agreement?

>      THE DEFENDANT: Yes."

¶ 6     The circuit court then recited count I to defendant and told him the minimum and maximum punishments for armed violence. The court further admonished him:

>      "THE COURT: If you plead guilty, *you would be giving up your right to a trial of any kind by a judge or a jury*. You would be giving up the right to confront and cross-examine witnesses who would testify against you in court during your trial. By pleading guilty, you would be giving up the privilege against self-incrimination and the presumption of innocence. *You would be giving up the right* to subpoena witnesses to come into court to testify for you and *to present any defenses you might have to this charge*, and by pleading guilty, *you would be giving up the right to require the* [S]*tate to prove you committed this offense*

- 2 -

*beyond a reasonable doubt*. Do you understand the rights you are giving up by pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about your rights this morning?

THE DEFENDANT: No.

THE COURT: Are you telling me you wish to give up your rights and plead guilty?

THE DEFENDANT: Yes." (Emphases added.)

At the court's request, defendant signed a jury waiver.

¶ 7        Next, the circuit court requested a factual basis. The prosecutor responded:

"MS. DOMASH: The [S]tate would present the testimony of Officer Daniels of the Decatur Police Department. Officer Daniels would testify that he observed this defendant on September 23rd of 2014 on a porch in Decatur, Illinois. He observed the defendant flee upon sight of him. The defendant was running oddly. When he entered the house, he located a shotgun and cocaine. The defendant was located in a bedroom, and the shotgun had the defendant's DNA [(deoxyribonucleic acid)] on it."

¶ 8        After the prosecutor's recitation of the factual basis, defendant confirmed to the circuit court that no one had forced him, in any way, to plead guilty and that the plea agreement was the only promise ever made to him in return for his proposed guilty plea. He also denied having any questions about his "rights, the possible sentences, or anything else." The circuit court then asked defendant a final time:

"THE COURT: Are you telling me you wish to continue to plead guilty this morning?

THE DEFENDANT: Yes."

¶ 9 Finding a factual basis for the guilty plea to count I and further finding the guilty plea to be knowing and voluntary, the circuit court accepted the guilty plea and sentenced defendant to imprisonment for the agreed-upon term of 15 years. (The parties had agreed to proceed immediately to sentencing, to waive a presentence investigation report, and to have the pretrial bond report stand as a prior history of criminality.)

¶ 10 In January 2016, with the circuit court's permission (see 725 ILCS 5/122-1(f) (West 2016)), defendant filed a successive postconviction petition, in which he claimed to be innocent of count I, armed violence, the offense to which he had entered a negotiated guilty plea. He submitted, as proof of his innocence, an affidavit by his codefendant, Davie Callaway. In the affidavit, which was dated October 15, 2015, Callaway averred that he alone was the one who had possessed the cocaine referenced in count I and that defendant had been unaware of the existence of the cocaine.

¶ 11 The State moved to dismiss the postconviction petition. One of the reasons the State gave for its motion was waiver. The State argued that by knowingly and voluntarily pleading guilty to armed violence, defendant had waived all nonjurisdictional errors, including errors of a constitutional nature.

¶ 12 The circuit court denied the State's motion for dismissal, and the petition advanced to the third stage of the postconviction proceeding, in which the parties adduced evidence for the court to weigh as the trier of fact. See *People v. Harris*, 2013 IL App (1st) 111351, ¶¶ 46-47 (describing the three stages of a postconviction proceeding).

¶ 13 On January 20, 2017, after hearing the evidence, including Callaway's testimony, the circuit court denied defendant's successive petition for postconviction relief. Although the court held that Callaway's affidavit and testimony "qualified as new evidence based on his unavailability at trial in view of his Fifth Amendment Right against self-incrimination" (see U.S. Const., amend. V; *People v. Edwards*, 2012 IL 111711, ¶ 38), the court simply did not believe Callaway. The court wrote in its judgment:

> "The court *** does not find that testimony of Mr. Callaway to be credible as Mr. Callaway did not come forward with this information until after he pled and he and the petitioner were in prison together. As such, the court does not find the petitioner has established a colorable claim of actual innocence."

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, defendant does not challenge the validity of his negotiated guilty plea to armed violence; he does not claim that his guilty plea was uninformed or involuntary. Rather, he claims that his guilty plea was false. He claims he really was innocent of armed violence when he solemnly declared to the circuit court that he was guilty of that offense. He cites *People v. Shaw*, 2018 IL App (1st) 152994, ¶ 41, in which the First District held that "a freestanding actual innocence claim may be brought [in a postconviction proceeding] after a guilty plea, and that a defendant need not challenge the knowing and voluntary nature of his or her plea to bring such a claim."

¶ 17 But another division of the First District reached the opposite conclusion in *People v. Barnslater*, 373 Ill. App. 3d 512, 527 (2007). In that case, the appellate court held: "If a defendant claims that his guilty plea was coerced, then that coercion provides the necessary

constitutional deprivation for which postconviction relief would be appropriate, but not where he claims actual innocence in the face of a prior, constitutionally valid confession of guilt." *Id.* In support of that holding, *Barnslater* quoted from *Cannon*, a decision by the supreme court: " 'Before his plea of guilty was accepted, the defendant, represented by appointed counsel, was fully and carefully admonished by the trial judge, and in the light of that admonition, the defendant's present [postconviction] claim [of actual innocence] cannot be entertained.' " (Emphasis omitted.) *Id.* at 528 (quoting *Cannon*, 46 Ill. 2d at 321).

¶ 18    The quoted sentence is, in *Cannon*, an *obiter dictum*, an inessential remark on a point not argued by counsel (*Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010)). In his appeal to the supreme court, the only argument the defendant in *Cannon* made against the denial of his postconviction petition was that the board of supervisors of De Witt County had been elected illegally, in violation of the one-man, one-vote principle, and that, consequently, "all of the proceedings in connection with the defendant's prosecution, including the selection of grand jurors, were illegal and in violation of his rights under the constitution of the United States and of this State." *Cannon*, 46 Ill. 2d at 320.

¶ 19    After rejecting that sole argument by the defendant, the supreme court in *Cannon* added:

"We have examined the claims advanced by the defendant in his post-conviction petition *which were not argued in this court*. They amount basically to an unsupported assertion that the accusation against him was false and that his daughter and two of his sons were coerced by threats from their mother, the defendant's wife, to refrain from asserting the defendant's innocence [to the charge of indecent liberties with a child]. Before his plea of guilty was accepted,

the defendant, represented by appointed counsel, was fully and carefully admonished by the trial judge, and in the light of that admonition, the defendant's present claim cannot be entertained." (Emphasis added.) *Id.* at 321.

Although the quoted paragraph from *Cannon* describes the defendant's claim of actual innocence as being "unsupported," the paragraph is not, in the end, an evaluation of that claim on its evidentiary merits. Rather, the paragraph concludes that because the defendant (1) was represented by counsel in the guilty-plea hearing and (2) was fully and carefully admonished by the trial judge, his postconviction claim of actual innocence "cannot be entertained." *Id.* "[*I*]*n the light of that admonition*, the defendant's present claim [of actual innocence] cannot be entertained," as the supreme court put it. (Emphasis added.) *Id.* To "entertain" a claim means to "give attention or consideration to" the claim. New Oxford American Dictionary 567 (2001). Thus, in the final sentence of the paragraph quoted above, the supreme court declines to give attention or consideration to the defendant's claim of actual innocence not because the claim is unsupported (as the supreme court remarks earlier in the quoted paragraph) but because, while being represented by counsel and after being fully admonished, the defendant pleaded guilty to the charge of which he now, in the postconviction proceeding, claims to be actually innocent. That is what the supreme court says in *Cannon*—and when the supreme court speaks, our duty is to obey.

¶ 20        There is, however, a slight complication. Because the quoted paragraph of *Cannon* could be "sloughed off without damaging the analytical structure of the opinion" and because it is an aside on a point not argued by counsel, it is, as we said, an *obiter dictum*. (Internal quotation marks omitted.) *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277-78 (2009). "*Obiter dictum* refers to a remark or expression of opinion that a court uttered as an

aside, and is *generally* not binding authority or precedent within the *stare decisis* rule." (Emphasis added.) *Id.* at 277. The supreme court uses the qualifier "generally" because "[e]ven *obiter dict*[*a*] of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court." (Internal quotation marks omitted.) *Id.* at 282; see also *People v. Williams*, 204 Ill. 2d 191, 207 (2003) ("But whether we characterize that portion of [our previous decision] as judicial or *obiter dicta*, it still should have guided the appellate court in this case."); *Country Club Estates Condominium Ass'n v. Bayview Loan Servicing LLC*, 2017 IL App (1st) 162459, ¶ 20 n.2 ("[The supreme] court's discussion of prompt payment would likely be classified as [an] *obiter dictum*; nevertheless *** we are bound by it.").

¶ 21        The question, then, is whether there is a "contrary decision" of the supreme court—a decision holding that a postconviction claim of actual innocence *can* be entertained after a valid plea of guilty. *Exelon*, 234 Ill. 2d at 282. We are aware of no such decision by the supreme court. Thus, the *obiter dictum* of *Cannon* is the law. See *id.*

¶ 22        We acknowledge that in *People v. Washington*, 171 Ill. 2d 475, 489 (1996), the supreme court stated:

> "We believe that no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence. *** We therefore hold as a matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process."

"It is fundamental, however, that the precedential scope of a decision is limited to the facts before the court." *People v. Palmer*, 104 Ill. 2d 340, 345-46 (1984). "The words of a judicial opinion do not have a vitality independent of the facts to which the opinion is addressed ***."

*People v. Arndt*, 49 Ill. 2d 530, 533 (1971). The facts in *Washington* were that the defendant was convicted of murder *after a trial*. *Washington*, 171 Ill. 2d at 476. Later, in a postconviction petition, he raised a claim of actual innocence. *Id.* at 478. He supported his claim with an affidavit by Jacqueline Martin, whose *in camera* testimony tended to prove that someone other than the defendant was the murderer. *Id.* at 477-78. For six years, Martin had refrained from coming forward and had hid in Mississippi out of fear of the man she now implicated. *Id.* at 478. The trial court granted the defendant a new trial "on the ground that Martin's testimony was new evidence which, if believed, would have 'had some significant impact' upon the jury." *Id.* The State appealed. *Id.* The appellate court "affirmed the grant of relief as to the newly discovered evidence claim." *Id.* at 479. The supreme court in turn affirmed the appellate court's judgment (*id.* at 490), holding, "as a matter of Illinois constitutional jurisprudence[,] that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted [was] cognizable [in a postconviction proceeding] as a matter of due process." *Id.* at 489.

¶ 23       But then, at the end of *Washington*, the supreme court added:

"Procedurally, such claims should be resolved as any other claim brought under the [Post-Conviction Hearing] Act. Substantively, relief has been held to require that the supporting evidence be new, material, noncumulative[,] and, most importantly, of such a conclusive character as would probably change the result on retrial." (Internal quotation marks omitted.) *Id.*

¶ 24       Those final words of guidance in *Washington* demonstrate how closely the holding of a case can be tethered to the facts of the case. If the facts in *Washington* were changed so that, instead of a trial ending in a guilty verdict, there had been a guilty plea, it would have

made no sense to forecast the probable result of a "retrial." *Id.* Without a trial in the first place, there could have been no retrial. Nor would it have made any sense to ask whether the evidence was "new, material, [and] noncumulative." *Id.* By pleading guilty, the defendant would have dispensed with evidence, inculpatory or exculpatory; he would have "*waive*[*d*] his rights to a jury trial and to proof beyond a reasonable doubt." (Emphasis in original.) *Hill v. Cowan*, 202 Ill. 2d 151, 154 (2002). Because a guilty plea would have "release[d] the State from proving *anything* beyond a reasonable doubt" (emphasis in original) (*id.*), *no* newly discovered evidence would have been "material" (*Washington*, 171 Ill. 2d at 489). Evidence, in general, would have been immaterial and superfluous; the guilty plea would have made it so.

¶ 25       Despite those difficulties, the First District in *Shaw* applied *Washington*'s holding to a case in which, after knowingly and voluntarily *pleading guilty*, the defendant raised a postconviction claim of *actual innocence*. *Shaw*, 2018 IL App (1st) 152994, ¶ 41.

¶ 26       The defendant in *Shaw* pleaded guilty in three cases. *Id.* ¶ 9. One of the cases charged him with home invasion, and the victim in that case was M.J. *Id.* ¶ 2. Afterward, the defendant petitioned for postconviction relief, raising several claims, including a claim that he actually was innocent of the offense of home invasion against M.J. *Id.* ¶ 12. In support of his claim of actual innocence, the defendant submitted an affidavit by Andrew Coe. *Id.* ¶ 13. According to Coe's affidavit, M.J. told Coe that (1) Anthony Benjamin, instead of the defendant, was really the perpetrator of the home invasion; (2) the police had coerced M.J. to choose the defendant out of a lineup; and (3) M.J.'s family had pressured her to refrain from correcting her false implication of the defendant. *Id.*

¶ 27       The trial court in *Shaw* granted a motion by the State to dismiss the postconviction petition. *Id.* ¶ 16. The court reasoned that because the newly discovered evidence,

Coe's affidavit, offered only inadmissible hearsay, it would not "change the result of a trial" and, thus, the claim of actual innocence lacked merit. *Id.*

¶ 28   The defendant in *Shaw* appealed to the appellate court, and in his appeal he "contend[ed] only that the trial court erred by dismissing his petition where he made a substantial showing of actual innocence by attaching Coe's affidavit, which alleged that M.J. admitted to falsely identifying [the] defendant as the offender." *Id.* ¶ 17. On appeal, the defendant abandoned the other two claims in his postconviction petition, the claims that the police physically had coerced him into confessing and that defense counsel had destroyed the voluntariness of his guilty plea by pressuring him to plead guilty. *Id.* Consequently, the First District in *Shaw* took it as a given that the defendant's guilty plea to the charge of home invasion against M.J. was voluntary and valid. *Id.* ¶ 25.

¶ 29   The State argued, initially, that the First District should decline to consider the defendant's claim of actual innocence "since it [did] not involve a claim that his plea was coerced." *Id.* ¶ 24. (The State made an alternative, fallback argument that the record in its entirety tended to discredit the claim of actual innocence. *Id.*)

¶ 30   In addressing that initial argument by the State, the First District in *Shaw* began by drawing a distinction between a gateway claim of actual innocence and a freestanding claim of actual innocence. *Id.* ¶¶ 26-29. In federal *habeas corpus* cases, a gateway claim of actual innocence was one that alleged an unconstitutional trial error plus actual innocence, and the contention of actual innocence was merely a "gateway," so to speak, through which the petitioner could pass so as to raise the trial error, which otherwise would have been procedurally forfeited. *Id.* ¶ 27. By contrast, a freestanding claim of actual innocence was, as the name suggested, solely a claim of actual innocence, without any allegation of a (forfeited) trial error.

Although the First District in *Shaw* thought it was important to "carefully distinguish between" those "two forms of actual innocence claims" (*id.* ¶ 26), the distinction matters, really, only in the federal system. Our own supreme court rejects any distinction between gateway claims of actual innocence and freestanding claims of actual innocence. See *People v. Coleman*, 2013 IL 113307, ¶ 89. Under Illinois law, "the evidentiary burden for an actual-innocence claim is always the same whether or not it would be considered a freestanding or gateway claim under federal law": it "must meet the *Washington* standard." *Id.* ¶ 91.

¶ 31        As we already have explained, the *Washington* standard, by its very terms, applies only to cases in which the defendant was convicted as a result of a trial. See *id.* ¶¶ 96-97. For that reason, as *Shaw* noted, "[s]ome Illinois courts ha[d] expressed doubts as to whether a freestanding actual innocence claim [might] be brought after a valid and voluntary guilty plea." *Shaw*, 2018 IL App (1st) 152994, ¶ 33 (citing *Barnslater*, 373 Ill. App. 3d at 527, and *People v. Simmons*, 388 Ill. App. 3d 599, 614 (2009)). Even so, according to *Shaw*, "[n]o Illinois court *** ha[d] found such claims to be categorically barred." *Id.* In fact, *Shaw* found one Illinois case that positively held that the " 'defendant can raise his freestanding claim of actual innocence in postconviction proceedings[,]' and [his] 'guilty plea does not prohibit him from raising [such a] claim in postconviction proceedings.' " *Id.* (quoting *People v. Knight*, 405 Ill. App. 3d 461, 471-72 (2010)).

¶ 32        Having found no Illinois case that categorically barred a defendant from raising a postconviction claim of actual innocence after validly pleading guilty (although it seems to us that *Barnslater*, 373 Ill. App. 3d at 527, uses language that could be so interpreted), the First District in *Shaw* reviewed decisions from other states. *Shaw*, 2018 IL App (1st) 152994, ¶¶ 34-40. After discussing the foreign decisions, which came down on both sides of the question, the

First District decided, for essentially two reasons, that the defendant's claim should be cognizable: that, in a postconviction proceeding, "a freestanding actual innocence claim [might] be brought after a guilty plea" and that "a defendant [did] not [have to] challenge the knowing and voluntary nature of his or her plea to bring such a claim." *Id.* ¶ 41. First, in *Washington*, the supreme court said: " 'In terms of procedural due process, we believe that to ignore such a claim [of actual innocence] would be fundamentally unfair. [Citations.] Imprisonment of the innocent would also be so conscience shocking as to trigger operation of substantive due process.' " *Id.* (quoting *Washington*, 171 Ill. 2d at 487-88). Second, it could not be doubted that sometimes, to avoid the risk of a trial, innocent defendants pleaded guilty—and if, as the supreme court said in *Washington*, imprisoning the innocent offended due process, that would include the innocent who had pleaded guilty. *Id.* ¶ 43.

¶ 33        In *Shaw*, the First District did not mean to flatten all differences between an innocent defendant who pleaded guilty and an innocent defendant who was convicted after a trial. The First District decided that a defendant raising a postconviction claim of actual innocence after validly pleading guilty ought to shoulder a heavier burden of proof than the preponderance burden that *Washington* prescribed for defendants claiming actual innocence after being found guilty in a trial:

> "After considering the various approaches used by other jurisdictions, we conclude that, to overcome the finality of a valid guilty plea, a defendant raising a freestanding actual innocence challenge *** must present ' "a truly persuasive demonstration of innocence" ' in the form of 'compelling evidence' (*Washington*, 171 Ill. 2d at 488-89 [(quoting *Herrera v. Collins*, 506 U.S. 390, 436 (1993) (Blackmun, J., dissenting, jointed by Stevens and Souter, JJ.)]) and must establish

- 13 -

the elements of an actual innocence claim (see *Edwards*, 2012 IL 111711, ¶ 32) by clear and convincing evidence. This standard would raise the defendant's burden of proof from a mere preponderance that is required following a conviction after a trial." *Id.* ¶ 55.

¶ 34 Ultimately, *Shaw* affirmed the trial court's judgment because the defendant had failed to carry that heavier burden of proof. The First District stated, "Assuming that [the] defendant's proffered evidence is newly discovered, material, and not cumulative, we do not find it to be of such a conclusive character that it would probably change the result on retrial—the most important element of an actual innocence claim." *Id.* ¶ 66 (citing *Washington*, 171 Ill. 2d at 489). ("Probably" was a lighter burden of proof than "clear and convincing," but a failure to carry the lighter burden was a failure to carry the heavier burden.)

¶ 35 In our view, *Shaw* is correct in its result but not in its analysis. For three reasons, we respectfully disagree with *Shaw*'s holding that a postconviction claim of actual innocence may be brought after a valid guilty plea (*id.* ¶ 41)—although we feel the force of the reasoning that innocent defendants, even innocent defendants who pleaded guilty, should not remain imprisoned. (But, perhaps, even that reasoning could be questioned in a case where the defendant pleaded guilty in return for the dismissal of more serious charges of which the defendant was in fact guilty.)

¶ 36 First, *Shaw* ends up applying the test from *Washington*, albeit with a more demanding burden of proof, and applying *Washington* to a guilty-plea case is like trying to jam a square peg into a round hole. To illustrate what we mean, we will quote some telling excerpts from *Shaw*. For example, the First District "[a]ssum[es] that [the] defendant's proffered evidence is *** not cumulative." *Id.* ¶ 66. But "['n]oncumulative['] means the evidence adds to what the

jury heard." *Coleman*, 2013 IL 113307, ¶ 96. It is unclear how the First District could have assumed the defendant's evidence to be noncumulative if, as a consequence of his guilty plea, no evidence had been heard by a jury. There had been no presentation of evidence; there had been no jury. Also, the First District writes, "[W]e do not find [the defendant's proffered evidence] to be of such a conclusive character that it would probably change the result on *retrial—the most important element of an actual innocence claim*." (Emphasis added.) *Shaw*, 2018 IL App (1st) 152994, ¶ 66. But this most important element of an actual innocence claim is inapplicable or unusable because there was no trial in the first place. Under the test in *Washington*, "the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial"—and "[']conclusive['] means [that] the evidence, *when considered along with the trial evidence*, would probably lead to a different result." (Emphasis added.) *Coleman*, 2013 IL 113307, ¶ 96. It is impossible to consider the new evidence along with the trial evidence if, because of a guilty plea, there was no trial evidence. In short, the problem is this: the supreme court dictates that all postconviction claims of actual innocence, without exception, "must meet the *Washington* standard" (*id.* ¶ 91), and guilty-plea cases are *inherently* incapable of meeting the *Washington* standard—which would suggest that a defendant who validly pleaded guilty cannot raise a postconviction claim of actual innocence, as Justice Schaefer wrote in *Cannon*. See *Cannon*, 46 Ill. 2d at 321.

¶ 37        Our second difficulty with *Shaw* is that actual innocence would be a nonjurisdictional defense to the charge and "[a] guilty plea waives all nonjurisdictional defenses or defects." *People v. Horton*, 143 Ill. 2d 11, 22 (1991). That includes nonjurisdictional defenses that are constitutional in nature. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). "If a defendant claims that his guilty plea was coerced, then that coercion provides the necessary constitutional

deprivation for which postconviction relief would be appropriate, but not where he claims actual innocence in the face of a prior, constitutionally valid confession of guilt," as the First District categorically held in *Barnslater*, 373 Ill. App. 3d at 527. In accordance with Illinois Supreme Court Rule 402(a)(4) (eff. July 1, 2012), the circuit court admonished defendant: "If you plead guilty, you would be giving up your right to a trial of any kind by a judge or a jury." If, by a postconviction claim of actual innocence, defendant now can obtain a trial, that admonition would have been false.

¶ 38        Third, defendants cannot knowingly and voluntarily plead guilty in the trial court and then turn around and complain to a reviewing court that the trial court found them guilty. That would be duplicitous. Assuming, for the sake of argument, that defendant's conviction of armed violence was a constitutional error, it was an error he himself invited by pleading guilty to armed violence. *People v. Kane*, 2013 IL App (2d) 110594, ¶ 27 ("The use of invited error as a basis for postconviction relief is clearly frivolous and patently without merit."). After being fully admonished and while represented by counsel, defendant affirmatively and voluntarily procured his own conviction by pleading guilty. He expressly consented to a procedure whereby the court would convict him of armed violence without proof. See *Hill*, 202 Ill. 2d at 154. "[U]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." (Internal quotation marks omitted.) *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). Defendant is estopped from "us[ing] the exact ruling or action [he] procured in the trial court as a vehicle for reversal on appeal." *Id.* The case for estoppel is especially strong considering that, as a result of defendant's guilty plea, the State's evidence might have grown stale.

¶ 39 In sum, until the supreme court makes an exception to the well-established doctrines of waiver and estoppel, we must faithfully apply those doctrines. See *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 32. Likewise, until the supreme court says otherwise, we must follow the *obiter dictum* of *Cannon*. See *Exelon*, 234 Ill. 2d at 282.

¶ 40 III. CONCLUSION

¶ 41 For the foregoing reasons, we affirm the circuit court's judgment, and we award the State $50 in costs against defendant. See 55 ILCS 5/4-2002(a) (West 2016).

¶ 42 Affirmed.