2020 IL App (1st) 171480-U

No. 1-17-1480

Order filed September 23, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 22263 |
| | ) | |
| JARVIS ALEXANDER a/k/a JERRY SMITH, | ) | Honorable |
| | ) | Steven G. Watkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Presiding Justice Gordon dissented, with opinion.

**ORDER**

¶ 1   *Held*:  The circuit court's denial of leave to file a second successive *pro se* petition for postconviction relief is affirmed over defendant's claim that the petition set forth a claim of actual innocence based upon newly discovered evidence.

¶ 2   Defendant Jarvis Alexander a/k/a Jerry Smith appeals from the circuit court's denial of leave to file a second successive *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends that the court erred

when the petition set forth a claim of actual innocence based upon newly discovered evidence that he only possessed a "shank" out of necessity. We affirm.

¶ 3    On September 11, 2008, defendant entered negotiated pleas of guilty to possession of contraband in a penal institution (720 ILCS 5/31A-1.1(b) (West 2006)) in case numbers 07 CR 22263, 08 CR 9428, and 08 CR 13010, and was sentenced to three consecutive five-year prison terms.[1] Also on September 11, 2008, defendant entered negotiated pleas of guilty to unlawful use of a weapon by a felon (UUWF) in case number 07 CR 4615, and attempt first degree murder in case 07 CR 13523, in exchange for concurrent prison terms of 3 and 10 years in prison. Defendant's motion to vacate was denied, and he did not file an appeal.[2]

¶ 4    On November 16, 2010, defendant filed a *pro se* postconviction petition seeking relief in all five cases alleging, in pertinent part, that he was denied the effective assistance of plea counsel and that the trial court failed to properly admonish him that his sentence would include a three-year term of mandatory supervised release (MSR).[3] The petition also requested that defendant's sentences run concurrently. The court docketed the petition, postconviction counsel was appointed, and the State filed a motion to dismiss.

¶ 5    On July 30, 2012, the circuit court found that the record demonstrated that plea counsel properly advised defendant of the sentences he would receive and he was properly admonished of his appellate rights. The court determined, however, that defendant was not advised of the three-year MSR term relating to the attempt murder conviction, even though he was advised of the two-

---

[1] The report of proceedings from September 11, 2008, is not included in the record on appeal.

[2] Although the record indicates that defendant filed a motion to vacate, that document is not included in the record and it is unclear which guilty pleas were the subject of the motion.

[3] Defendant's initial postconviction petition is not included in the record on appeal.

year MSR term for his other convictions. Therefore, the court reduced defendant's sentence for attempt first degree murder by one year, to nine years' imprisonment. The court denied defendant's request that his sentences run concurrently and dismissed the remaining postconviction claims, finding that defendant failed to make a substantial showing that his constitutional rights were violated.

¶ 6    Defendant filed a *pro se* motion for reconsideration, which the circuit court denied on October 11, 2012. Defendant filed a notice of appeal from that order which was assigned number 1-12-3281 in this court. This court also granted defendant leave to file a late notice of appeal from the circuit court's order granting in part and dismissing in part his petition, which was assigned number 1-12-3523. Upon defendant's motion, appeal numbers 1-12-3281 and 1-12-3523 were consolidated for disposition before this court. We affirmed. See *People v. Smith*, 2017 IL App (1st) 123281-UB.

¶ 7    On January 31, 2013, defendant sought leave to file a successive *pro se* petition for postconviction relief in case numbers 07 CR 22263, 08 CR 9428, and 08 CR 13010, alleging that he was actually innocent and that he was denied effective assistance when counsel induced him to plead guilty. In making this argument, defendant stated that he pleaded guilty to three counts of possession of a controlled substance in a penal institution despite the fact there was no evidence that he committed that offense. The circuit court denied defendant relief, noting, in pertinent part, that he had entered guilty pleas to possession of contraband in a penal institution rather than possession of a controlled substance in a penal institution. On appeal, we affirmed while also ordering that defendant's mittimi be amended to reflect the proper statutory citation for the offense

of which he was convicted, *i.e.*, possession of contraband in a penal institution. See *People v. Alexander*, 2014 IL App (1st) 131635-U.

¶ 8   On March 1, 2017, defendant sought leave to file a second successive *pro se* postconviction petition in case number 07 CR 22263, alleging that he was actually innocent because he was forced to carry a shank by gang members or face retribution. Attached in support were the affidavits of defendant, Marcus Logan, and F. Ricky Lambert.

¶ 9   In defendant's affidavit, he averred that prior to his plea, the trial court did not ask, and he did not volunteer, information about "pressures" or jail conditions, that he entered a guilty plea because he feared what would happen if he did not, and that he did not belong to Logan's gang. Defendant further averred that in Cook County jail, he was treated for a broken jaw, broken nose, black eyes, and other injuries, and was forced to carry shanks or face "consequences" from Logan's gang. Defendant finally averred that there was "no way" he could have convinced Logan to step forward prior to pleading guilty and he was surprised he was able to obtain an affidavit from Logan.

¶ 10   Logan averred that while in jail between 2007 and 2008, he held a leadership position in his gang and the gang recruited defendant by use of threats. At some time in 2007, although Logan forgot "exactly what month," he and defendant were housed in the same division and he ordered defendant to carry a shank "at least a dozen times." Logan further averred that "on at least three occasions" when defendant refused to carry or hide shanks, defendant suffered a broken jaw, broken nose, and black eyes.  Logan further averred that in "late 2007," he had a shank placed in defendant's personal property, ordered defendant not to remove it, and "had him violated" after he was caught with the shank.

¶ 11    Lambert averred that in the course of providing legal assistance to defendant he learned that defendant was forced to carry a shank by Logan and told defendant that defendant could bring this fact to the court's attention. Lambert further averred that he "reach[ed] out" to Logan and requested an affidavit, which he received in September 2016.

¶ 12    On May 11, 2017, the circuit court denied defendant leave to file the *pro se* successive postconviction petition noting, in pertinent part, that Logan's affidavit was not newly discovered when it contained facts already known to defendant at the time of his plea, that is, Logan threatened defendant and forced him to carry a shank. The court also noted that a person commits the offense of possessing contraband in a penal institution when he knowingly possesses contraband, regardless of the intent with which he possesses it. Consequently, Logan's assertion that he forced defendant to carry the shank was not material to defendant's guilt. Defendant filed a timely *pro se* notice of appeal.[4]

¶ 13    On appeal, defendant contends that the circuit court erred when it denied him leave to file the second successive *pro se* postconviction petition because it set forth a colorable claim of actual innocence based upon newly discovered evidence. Specifically, defendant contends that Logan's affidavit established that defendant possessed a shank out of necessity due to the threat of violence.

¶ 14    The Act provides a statutory remedy to criminal defendants who assert claims of substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not a substitute for an appeal but rather a mechanism for a defendant to assert a collateral attack

---

[4] The record reflects that on October 11, 2018, defendant filed a *pro se* petition for relief from judgment (735 ILCS 5/2-1401 (West 2018)) seeking to vacate his UUWF conviction pursuant to *In re N.G.*, 2018 IL 121939, because the aggravated unlawful use of a weapon conviction used as the predicate offense was rendered void by *People v. Aguilar*, 2013 IL 112116. The petition listed the case numbers for all cases to which defendant entered a guilty plea on September 11, 2008. A January 3, 2019 order states that the circuit court struck all case numbers except the one relating to the UUWF conviction.

on a final judgment. *Id*. The Act contemplates only one postconviction proceeding; however, this bar will be relaxed when a defendant can establish either cause and prejudice for failing to raise a claim in an earlier proceeding, or actual innocence. *Id*. ¶¶ 22-23. A defendant must therefore obtain leave of court to file a successive postconviction petition. *Id*. ¶ 24

¶ 15    A request to file a successive petition based on actual innocence is reviewed under a higher standard than the frivolous or patently without merit standard applied to an initial petition. *Id*. ¶¶ 25-29. The circuit court should deny leave to file a successive petition when it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence. *People v. Sanders*, 2016 IL 118123, ¶ 24. Accordingly, leave of court should be granted where the petition and supporting documentation raise the probability that it is more likely than not that no reasonable juror would have convicted defendant in light of the new evidence. *Id*.

¶ 16    At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true. *People v. Robinson*, 2020 IL 123849, ¶ 45. When determining the legal sufficiency of a postconviction petition, a court is precluded from making factual and credibility determinations. *Id*. We review the denial of leave to file a successive postconviction petition alleging actual innocence *de novo*. *Id*. ¶ 40.

¶ 17    In order to establish a claim of actual innocence, a petition's supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *Id*. ¶ 47. Evidence is newly discovered if it was discovered after trial and a defendant could not have discovered it earlier through the exercise of

due diligence. *Id*. Evidence is material when it is relevant and probative of a defendant's innocence, and noncumulative if it adds to the information that the fact finder heard at trial. *Id*. Conclusive evidence is evidence that, when considered with the evidence presented at trial, would probably lead to a different result at retrial. *Id*. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Id*.; see also *People v. Coleman*, 2013 IL 113307, ¶ 97 (asking whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines confidence in the judgment). Our supreme court has determined that the new evidence need not be entirely dispositive to be likely to alter the result on retrial and that probability is the key to considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. *Coleman*, 2013 IL 113307, ¶ 97.

¶ 18    Before reaching the merits of defendant's claim on appeal, we note that defendant raises a claim of actual innocence following the entry of guilty pleas. Defendant relies on *People v. Shaw*, 2019 IL App (1st) 152994, ¶ 44 to argue that his actual innocence claim is cognizable under the Act because the "wrongful imprisonment of an innocent person violates procedural and substantive due process under the Illinois Constitution." See *id.* (holding that a "freestanding actual innocence claim may be brought after a guilty plea, and that a defendant need not challenge the knowing and voluntary nature of his or her plea to bring such a claim"). We note that this is a question currently pending before our supreme court. See *People v. Reed*, 2019 IL App (4th) 170090, ¶ 26, *pet. for leave to appeal granted*, No. 124940 (Sept. 25, 2019) (finding that a defendant cannot raise an actual innocence claim in a postconviction petition after pleading guilty, that such a claim is akin to invited error, and that the use of invited error as a basis for postconviction relief is frivolous and patently without merit). Regardless of our supreme court's ultimate decision as to whether a

defendant can make a freestanding claim of actual innocence in a postconviction petition after entering a guilty plea but without challenging the validity of that plea, in the case at bar, defendant has failed to show that the circuit court improperly denied him leave to file the instant second successive *pro se* postconviction petition when the petition and its supporting documents failed to establish a colorable claim of actual innocence.

¶ 19    Here, in order to determine whether defendant has set forth a colorable claim of actual innocence, we consider whether the second successive petition, along with the supporting affidavits, raised the probability that it is more likely than not that no reasonable trier of fact would find him guilty of possessing contraband in a penal institution in light of the new evidence.

¶ 20    While we agree with defendant that the content of Logan's affidavit is noncumulative in that evidence that defendant was ordered to carry a shank or face physical violence from a gang was not placed before the court at defendant's plea hearing, this information is not newly discovered as defendant's affidavit demonstrates that the information was known to him prior to the entry of his plea. In other words, defendant was obviously aware of the threats and violence from Logan's gang prior to the date when defendant entered the guilty plea and defendant was in no way prohibited from presenting this evidence to the court.

¶ 21    We next turn to whether the contents of Logan's affidavit, that defendant was forced to carry a shank under threat of violence from Logan and his gang, was of such a conclusive nature that it would change the result on retrial by raising a necessity defense.

¶ 22    In order to successfully raise a necessity defense, a defendant must show that he was without blame in occasioning or developing the situation and reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might have reasonably

resulted from his own conduct. 720 ILCS 5/7-13 (West 2006). A defense of necessity applies when the threat of harm was immediate, and defendant's conduct was the sole option to avoid injury. *People v. Boston*, 2016 IL App (1st) 133497, ¶ 39. "This defense usually involves the choice between two admitted evils where other optional courses of action are unavailable, and 'the conduct chosen must promote some higher value than the value of literal compliance with the law.' " *Id.* (quoting *People v. Janik*, 127 Ill. 2d 390, 399 (1989)). "[T]he defense of necessity arises when a person reasonably believes his conduct, which would otherwise constitute an offense, was necessary to avoid a public or private injury greater than the injury which might have resulted from his conduct." *People v. Kite*, 153 Ill. 2d 40, 46 (1992). In the case at bar, because defendant was charged with possessing a weapon in a penal institution, we also consider whether "(1) the prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authority or there exists a history of futile complaints which make any result from such complaint illusory; and (3) there is no time or opportunity to resort to the courts." (Internal quotation marks omitted.) *Id*. at 45.

¶ 23 While the presence of all the additional factors is not required for the establishment of a necessity defense, "[a] specific and immediate threat, however, constitutes the very nature of a necessity defense; thus, proof of that factor is a threshold requirement for its establishment." *Id.* A defendant's "[f]ailure to prove the existence of a specific and immediate threat obviates the need to conduct an inquiry into the second and third factors." *Id.* Put another way, in the absence of a specific and immediate threat, an inmate is not faced with a choice between avoiding a public or private injury greater than the injury which might have resulted from his conduct. *Id.* at 46.

¶ 24    Although Logan's affidavit asserts that defendant was threatened and subjected to physical violence from Logan and his gang, the contents of the affidavit do not establish a specific and immediate threat. Specifically, Logan's affidavit does not contain the dates upon which defendant was threatened, beaten, or given shanks to hold for the gang. Rather, Logan averred that he and defendant were housed together in jail in 2007 although he could not remember "exactly what month," and he ordered defendant to carry a shank "at least a dozen times." Logan also averred that "on at least three occasions" when defendant refused to carry or hide the shanks defendant suffered a broken jaw, a broken nose, and black eyes, and that in "late 2007," he had a shank placed in defendant's personal property and ordered defendant not to remove it. The lack of specific dates results in the absence of a specific and immediate threat which led defendant to choose between avoiding a public or private injury greater than the injury which might have resulted from his conduct, and is fatal to his necessity defense. *Id.* at 45-46.

¶ 25    We note that our supreme court has determined that "to demonstrate a continuing threat, the defendant would still have to provide some evidence that a specific and immediate threat existed, albeit over an extended period of time." *Id.* at 46-47. Despite the fact that Logan averred that he ordered defendant to carry a shank more than 12 times, there is no indication whether those instructions came over the course or days, weeks, or months, and Logan himself could only assert that the events detailed in the affidavit occurred in 2007. See *id.* at 47 ("vague, uncorroborated testimony, coupled with the length of time between the alleged events, do not support a finding of a specific and immediate threat"). This lack of specificity regarding the threats against defendant "obviates the need to conduct an inquiry into the second and third factors" underlying a necessity defense. *Id.* at 45.

¶ 26    Accordingly, because the contents of Logan's affidavit did not establish a necessity defense, the affidavit is not of such a conclusive nature that it would probably change the result on retrial and defendant has failed to establish a colorable claim of actual innocence. See *Robinson*, 2020 IL 123849, ¶ 47. The circuit court therefore properly denied defendant leave to file the instant second successive postconviction petition when the petition and supporting documentation did not raise the probability that it was more likely than not that no reasonable factfinder would have found defendant guilty of possessing contraband in a penal institution in light of the facts contained in Logan's affidavit. *Sanders*, 2016 IL 118123, ¶ 24.

¶ 27    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.

¶ 29    Presiding Justice Gordon, dissenting:

¶ 30    I must respectfully dissent because I believe that the majority is holding defendant to a higher standard than the law requires.

¶ 31    First, the majority finds that the evidence in support of his actual-innocence claim was not newly discovered because it contained facts that were already known to defendant. *Supra* ¶ 20. The majority observes that defendant was "obviously aware" of both the "threats" made to him and the "violence" exacted on him by Logan's gang before defendant pleaded guilty. *Supra* ¶ 20. The majority then finds that defendant was "in no way prohibited from presenting this evidence" to the trial court. *Supra* ¶ 20.

¶ 32    This finding begs the question: what "evidence" is the majority referring to here? The finding confuses facts with evidence. Although defendant was obviously aware of the fact of his own injuries, defendant did not know, and could not have suspected, at the time of his guilty plea

that Logan would actually come forward with evidence, namely, an affidavit acknowledging all the violence that he—Logan—and his gang had exacted on defendant. In an affidavit, Logan acknowledged that, at the hands of his gang, defendant suffered a broken jaw, a broken nose and black eyes. In defendant's affidavit, defendant averred that there was "no way" he could have convinced Logan to step forward prior to defendant's guilty plea, and defendant was surprised that the law student aiding him was able to obtain an affidavit from Logan. *Supra* ¶ 9. Although the trial court denied defendant leave to file, it acknowledged that "the source of these facts, Logan, may have been uncooperative and unwilling to come forward" prior to defendant's plea. See *People v. Edwards*, 2012 IL 111711, ¶ 38 (since a codefendant had a fifth amendment right to avoid self-incrimination, "[n]o amount of due diligence could have forced him to violate that right if he did not choose to do so").

¶ 33 I must respectfully disagree with the majority's legal analysis which concludes that, in a claim of actual innocence such as the one before us, it is the facts that must be newly discovered, rather than the evidence. That is not the law today and has never been the law.

¶ 34 In *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009), our supreme court found that the evidence in support of an actual innocence claim must be: (1) newly discovered; (2) material and not cumulative; and (3) of such a conclusive character that it would probably change the result on retrial. I authored the appellate opinion that the Illinois Supreme Court affirmed with these same findings. *People v. Ortiz*, 385 Ill. App. 3d 1 (2008), *aff'd*, 235 Ill. 2d at 322.

¶ 35 In the case at bar, the majority changes the law and finds that it is the facts, rather than the evidence, that must be newly discovered. *Supra* ¶ 20. The Illinois Supreme Court clearly decided this issue in *Ortiz*, and it would be error to turn the clock back to the time before *Ortiz* existed.

¶ 36    The majority finds that, to qualify as new evidence, it is the facts that must be new and undiscovered at the time of trial and that evidence is not newly discovered when it presents facts already known to the defendant at or prior to his trial, although the source of those facts may have been unknown, unavailable, or uncooperative. *Supra* ¶ 20.   This finding contradicts *Ortiz*, which found that the testimony of a witness was newly discovered where the witness had "essentially made herself unavailable." *Ortiz*, 235 Ill. 2d at 334; *People v. Knight*, 405 Ill. App. 3d 461, 467-68 (2010).  Similarly, in *Edwards*, 2012 IL 111711, ¶ 32, our supreme court reiterated that "the *evidence* in support of the claim must be 'newly discovered.' "  (Emphasis added.)

¶ 37    By holding that evidence of facts already known to defendant cannot be newly discovered, the majority finds, in essence, that it is the fact that must be newly discovered rather than the evidence.  Taken to its natural conclusion, this holding would always bar an innocent defendant from filing an actual innocence claim.  Since a truly innocent defendant is always aware of the fact of his own innocence, this fact can never be newly discovered.  While the fact of his innocence is always known to an innocent defendant, *Ortiz* affords him the ability to present newly discovered evidence of this fact to prove his innocence.

¶ 38    Second, although the majority finds that Logan's affidavit is noncumulative, it finds that it was not of such a conclusive character that it would probably change the result at trial.  Recently, our supreme court emphasized that "the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *People v. Robinson*, 2020 IL 123849, ¶ 56.

¶ 39    The majority finds Logan's affidavit unpersuasive because it lacks "the specific dates" when Logan's gang threatened or beat defendant or gave him shanks to hold.  In the instant

petition, defendant contests his conviction in case number 07 CR 22263,[5] which arose from the seizure on October 18, 2007, of a shank from defendant's cell in Cook County Jail by a correctional officer. The officer performed the search because defendant was being transferred to Division 9 of the jail. In a supporting affidavit, Logan averred that he and defendant were housed together in Division 10 of Cook County Jail in 2007, that he ordered defendant to carry a shank "at least a dozen times," and that defendant was beaten on at least three different occasions when defendant refused to carry or hide shanks for Logan and his gang. When defendant hesitated to carry shanks, Logan reminded him "what would happen." Logan had a shank placed in defendant's personal property in late 2007 and ordered defendant not to remove it. Logan averred that, "shortly afterward," defendant was transferred to another unit and found with the shank. After this shank was found, Logan had defendant "physically violated" for failing to alert Logan that defendant was being moved to another unit.

¶ 40 Logan's affidavit shows that it was the same shank that Logan had placed in defendant's property which was then seized by the correctional officer on October 18, 2007. The fact that both Logan and the correctional officer refer to the shank's seizure during a transfer search in late 2007 indicates that it was the same shank. In addition, Logan's affidavit avers that he and defendant were "both housed" together in Division 10, and the very next line avers that he ordered defendant to carry a shank "at least a dozen times." The implication of these two lines is that the shank-carrying which defendant did for Logan occurred during the time that they were housed together. Thus, assuming Logan's affidavit is true, as we must, this means that Logan ordered defendant to

---

[5]I provide the lower court case number because defendant pled guilty to two other instances of shank-carrying which he does not challenge in the instant petition.

carry shanks at least 12 times in the nine months leading up to this incident, and threatened defendant to do so, and beat him when he did not.

¶ 41     As noted, the majority finds Logan's affidavit unpersuasive for its alleged failure to provide exact dates.  Frankly, I would find it remarkable, and bordering on the unbelievable, if Logan and his gang had carefully maintained records of the specific dates when they had threatened or beaten defendant.  Shank-carrying in prison is not an activity known for its record keeping.  This is not a dentist's office or an accounting firm.  It is not like Logan has a file cabinet in his jail cell with an "S" folder for shank-carrying, coming after "D" for dental records and just before "T" for tax returns.

¶ 42     An opinion that criticizes a claim for a failure to record the exact dates of shank-carrying verges on the absurd.

¶ 43     For the foregoing reasons, I must respectfully dissent.