NOTICE

Decision filed 05/14/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230655-U

NO. 5-23-0655

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 15-CF-414 |
| | ) | |
| EMANUEL L. WILLIAMS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's denial of defendant's second amended postconviction petition following a third-stage evidentiary hearing on his actual innocence claim, where defendant failed to present evidence that clearly and convincingly demonstrated he would probably be acquitted at trial.

¶ 2    Defendant, Emanuel L. Williams, appeals the Champaign County circuit court's denial of his petition asserting an actual innocence claim under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) following a third-stage evidentiary hearing. On appeal, defendant argues that the court erred by denying his postconviction petition where he brought forth new, material, and noncumulative evidence that clearly and convincingly demonstrated he would probably be acquitted at trial. We affirm.

1

¶ 3                                    I. Background

¶ 4      On August 20, 2015, defendant pled guilty to aggravated criminal sexual abuse (720 ILCS 5/11-1.60(a)(6) (West 2014)) in exchange for the State's dismissal of four other charges, including unlawful restraint (*id.* § 10-3(a)), domestic battery (*id.* § 12-3.2(a)(1)), criminal sexual assault (*id.* § 11-1.20(a)(1)), and aggravated criminal sexual assault (*id.* § 11-1.30(a)(3)). The charges stemmed from an incident involving defendant's former girlfriend, Dana Chounard. As to its factual basis to support the plea, the State averred that the evidence would show that on March 24, 2015, defendant became angry with Chounard at his apartment. Defendant threw items at Chounard and refused to let her leave. Defendant hit Chounard and threatened her life. Defendant demanded sex and Chournard complied only because she feared for her life. Chounard believed defendant would allow her to leave if she complied with his demand for sex. The circuit court accepted defendant's plea and sentenced him to 180 days in the county jail and 48 months' probation. In addition, the court imposed various probation conditions, including the condition that he register as a sex offender as required by the Sex Offender Registration Act (730 ILCS 150/1 to 12 (West 2014)).

¶ 5      On December 21, 2016, the circuit court held a probation revocation hearing. After the court fully admonished defendant of the allegations, his rights, and the potential sentences, defendant elected to enter a formal admission and stipulate to the allegations in the petition. The court resentenced defendant to 76 months in prison on January 24, 2017, and defendant subsequently challenged his sentence on appeal. The Fourth District affirmed defendant's sentence on May 17, 2019. *People v. Williams*, 2019 IL App (4th) 170161-U.

¶ 6      On November 12, 2019, defendant filed a *pro se* postconviction petition, alleging that defense counsel was ineffective in the guilty plea proceedings by failing to adequately

communicate with him and by misinforming him about the sex offender registration requirements for his offense. Defendant alleged that defense counsel advised that he would be required to register as a sex offender for only five years but that defendant was instead required to register for life. Defendant alleged that he would not have pleaded guilty had he known he would be required to register for life. Defendant additionally alleged that he was actually innocent of the crime. In support, he attached an affidavit from Chounard, in which she attested that she had consensual sex with defendant on the date in question and that the victims' advocate coerced her into criminalizing defendant's conduct. Defendant alleged that he would not have pleaded guilty if Chounard had presented the affidavit to the court prior to his plea and that he only pleaded guilty to avoid a possible higher sentence following a trial. Defendant also attached a love letter from Chounard in support of his actual innocence claim, demonstrating that Chounard sent him money in prison.

¶ 7    On December 27, 2019, after a public defender was appointed to represent defendant, defendant filed an amended postconviction petition. The amended petition realleged defendant's *pro se* ineffective assistance of counsel claim. The amended petition further alleged that defendant's plea was not knowing and voluntary, given that it was based on defense counsel's inaccurate advice regarding the registration period. Citing *People v. Greer*, 12 Ill. 2d 192, 205 (2004), postconviction counsel alleged that he was not "amending" defendant's *pro se* actual innocence claim because *People v. Reed*, 2019 IL App (4th) 170090, barred such claim where defendant entered a negotiated guilty plea.[1]

¶ 8    On July 8, 2020, the circuit court granted a motion to dismiss filed by the State. On May 3, 2022, the Fourth District reversed and remanded the case for further second-stage proceedings

_____

[1]The Illinois Supreme Court subsequently affirmed the Fourth District's decision in *Reed* but held that a guilty plea does not foreclose a postconviction claim of actual innocence. *People v. Reed*, 2020 IL 124940.

3

on defendant's actual innocence claim, holding that defendant was denied reasonable assistance of postconviction counsel. *People v. Williams*, 2022 IL App (4th) 210087-U, ¶ 39.

¶ 9　　On January 13, 2023, newly appointed postconviction counsel filed a second amended postconviction petition asserting that defendant's original *pro se* petition adequately set forth his claim of actual innocence and provided evidence in support of the claim. The State subsequently filed a motion to dismiss defendant's second amended petition.

¶ 10　　On March 3, 2023, the circuit court denied the State's motion to dismiss, finding as follows:

"The affidavit, letter and suggestion that the victim gave Defendant money while in prison are new, material and noncumulative. The issue for the Court is whether this evidence clearly and convincingly demonstrates that a trial would probably result in acquittal. It may well show this, based on the well-pleaded facts."

The court indicated that its resolution of the issue would depend on a credibility determination. Accordingly, the court advanced defendant's second amended petition to a third-stage evidentiary hearing.

¶ 11　　On August 15, 2023, the circuit court held the third-stage evidentiary hearing. Postconviction counsel called Chounard to testify, and she testified consistent with her affidavit. Chounard testified that she previously dated defendant and that the two were "regaining" their friendship. When asked if she rememberd March 24, 2015, Chounard stated, "Yes, for the most part." Chounard explained that she was on medication that caused her to suffer memory loss. Chounard recalled that on March 24, 2015, she and defendant were "agitated." Chounard went to defendant's home "to talk to him, and [they] were drinking, and things just got out of control." Chounard clarified that she and defendant got into a verbal argument. Chounard testified that they had intercourse three times that day and that it was consensual each time.

4

¶ 12    Chounard testified that she mailed defendant an affidavit in August 2018, in which she attested that the sex was consensual. According to Chounard, the victim's advocate who assisted her in filling out the paperwork for an order of protection in 2015 exaggerated or fabricated many of the allegations. Chounard claimed that the accusation of sexual abuse was "misconstrued" and inaccurate. Chounard again testified that the sex was consensual. Chounard sought the first order of protection because she and defendant "were having an issue with agreeing on [their] relationship], and [they] just didn't come to an agreement." When asked about the allegation in the petition that defendant scared her, Chounard explained she was nervous because she had never sought an order of protection before. She denied that she was scared defendant would physically attack her. Chounard testified that she did not seek assistance from police immediately following the March 2015 incident. When asked how police became involved, Chounard explained that her "daughter had talked to the police officer that was at the school—at her [daughter's] school, and [her daughter] had him come and get [Chounard] from [Chounard's] house and take [Chounard] to the police station in Urbana." Chounard acknowledged that she wrote defendant letters while he was in prison because they "were working on [their] friendship again."

¶ 13    Chounard testified that she filed an additional petition for order of protection against defendant shortly before his release from prison in 2019. Chounard explained that she filed for the order of protection "[b]ecause [she] basically just didn't want him to contact [her] anymore." Chounard stated that their friendship "was just not working out." When asked why she decided to testify in court, Chounard responded, "Because it needs to be cleared up. What happened was consensual. It was just a very confusing time. I—I am not sure what else to say."

¶ 14    On cross-examination, Chounard expressed confusion regarding the dates on which she filed the petitions for orders of protection. She continued to testify that the sex was consensual.

5

Chounard testified that she did not take the affidavit she prepared to the police station. Instead, she mailed the affidavit directly to defendant.

¶ 15　The State submitted both petitions for orders of protection into evidence at the hearing. In the 2015 petition for order of protection, Chounard alleged that "[i]t all started when [she] didn't do what [defendant] wanted (sexually)." Chounard alleged that defendant began throwing objects and screaming. Chounard further asserted that defendant hit her in the face several times, knocking her to the ground. Chounard alleged that she attempted to leave but defendant threatened to kill her. Choundard "did not think [she] was going to make it out of his house alive." Chounard alleged that defendant "terrorized [her] for approx. 3 hours." Chounard then alleged that defendant "wanted to have sex" after he calmed down and that she "let him only for [her] safety." In the petition, Chounard reiterated that she was terrified of defendant and that she "was forced to have sex with him." The petition additionally listed nine prior criminal cases in which defendant was charged.

¶ 16　In the 2019 petition for order of protection, Chounard alleged that defendant continued to call her from prison despite her request that he have no further contact with her. Chounard alleged that defendant "previously sexually assaulted [her], and was in prison for violating probation resulting from the criminal case attached to the assault." Chounard alleged that defendant called her multiple times, including "at least 30 times" in September 2019. Chounard asserted that the calls caused her anxiety and nightmares. Chounard further asserted that defendant "wanted [her] to help him get off the sex offender registry." Chounard concluded the petition by stating that she feared defendant would continue to harass her because he had just been released from prison. Chounard stated that she was "afraid because he ha[d] physically hurt [her] in the past and knows where [she] work[s]."

¶ 17    On August 21, 2023, the circuit court entered a detailed order denying defendant's second amended petition. After considering Chounard's testimony, the court found as follows:

"Dana Chounard's memory was not good, admitting she was on medication. She was evasive in answering questions or giving explanations for her actions. She has an interest in doing what Defendant wants since they have been in a relationship for a long time. Her demeanor suggested she had an agenda. Finally, her testimony is inconsistent with not only the other evidence in the case but with reasonable inferences to be drawn from the evidence."

The court additionally provided a detailed outline of the reasons it found Chounard's testimony lacked reliability and credibility. Specifically, the court found as follows: Chounard's act of seeking an order of protection immediately after the March 24, 2015, incident was "consistent with a crime occurring"; Chounard essentially testified that she lied under oath in the 2015 petition; Chounard failed to identify the victim's advocate by name and failed to specifically identify the facts she was told to exaggerate in the petition; Chounard testified that she had issues with defendant at the time she authored the affidavit; Chounard mailed the affidavit directly to defendant, rather than sending it to his attorney or providing it to police; Chounard did not provide an explanation as to why she failed to advise police, the State, or defendant's attorney that she fabricated the allegations of sexual abuse due to coercion from the victim's advocate from 2015 to 2018; Chounard did not admit that she lied about the sexual abuse allegations in the love letter she sent defendant in prison; Chounard filed an additional petition for order of protection shortly before defendant's release from prison in 2019; Chounard repeated the allegations against defendant in the second order of protection; Chounard's 2019 petition indicated that defendant pressured her to assist him in "get[ting] off the sex offender registry"; and Chounard consistently

7

expressed fear of defendant in her petitions for orders of protection. The court further found that Chounard's recantation was not newly discovered evidence. The court, having found that Chounard's recantation and testimony lacked credibility, concluded that defendant failed to prove, by a preponderance of the evidence, that his constitutional rights were violated.

¶ 18    Defendant filed a timely notice of appeal.

¶ 19                                    II. Anaylsis

¶ 20    On appeal, defendant argues that this court should vacate the circuit court's denial of his second amended postconviction petition and remand for further proceedings, where Chounard's testimony recanting her prior allegations of sexual abuse constituted newly discovered evidence that clearly and convincingly demonstrated a new trial would result in acquittal. We disagree.

¶ 21    The Act "provides a statutory remedy to defendants who claim substantial violations of their rights occurred in the proceedings that resulted in their conviction." *People v. Reed*, 2020 IL 124940, ¶ 18. In *People v. Washington*, 171 Ill. 2d 475, 489 (1996), our supreme court concluded that an actual innocence claim was cognizable under the Act.

¶ 22    Where, as here, a defendant pleads guilty, the defendant must meet a higher standard for actual innocence claims. *Reed*, 2020 IL 124940, ¶ 48. Our supreme court has determined, in pertinent part, as follows:

> "[A] successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal. New means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence. [Citation.] This is a comprehensive approach where the court must determine whether the new evidence places the evidence presented in the underlying

8

proceedings in a different light and 'undercuts the court's confidence in the factual correctness' of the conviction. [Citation.]" *Id.* ¶ 49.

Our supreme court further noted that establishing an actual innocence claim "has proven to be difficult for defendants, and a successful claim of innocence is rare." *Id.* ¶ 42. At the third-stage evidentiary hearing, "the trial court acts as a factfinder, making credibility determinations and weighing the evidence." *Id.* ¶ 51. As such, a reviewing court reviews "the court's decision to deny relief for manifest error," which is a clearly evident, plain, and indisputable error. *Id.*

¶ 23 After carefully reviewing the record in this case, we cannot say that the circuit court's denial of defendant's second amended postconviction petition was manifestly erroneous. More specifically, we cannot say that it was unreasonable for the court to question the reliability of Chounard's testimony. The court provided a lengthy, and detailed, order in support of its determination that Chounard lacked credibility. As the court correctly noted, Chounard's testimony at the third-stage hearing conflicted with the consistent allegations set forth in her prior petitions for orders of protection against defendant. In both petitions, Chounard consistently expressed her fear of defendant and consistently claimed that he sexually harmed her. In the 2019 petition, Chounard alleged that defendant repeatedly called and harassed her in an attempt "to help him get off the sex offender registry." Chounard reiterated her fear of defendant in the 2019 petition. The court, being in the best position to judge the credibility of the witnesses, further noted that Chounard's "demeanor suggested she had an agenda." Because it was reasonable for the court to infer from the evidence that defendant coerced Chounard into testifying that the sex was consensual in an effort to relieve him of the requirement to register as a sex offender, this court cannot say that the circuit court's decision to reject Chournard's testimony was manifestly erroneous. Therefore, the circuit court did not err by determining that defendant failed to present

9

evidence that clearly and convincingly demonstrated a new trial would probably result in his acquittal.[2]

¶ 24                                    III. Conclusion

¶ 25    For these reasons, we affirm the judgment of the circuit court of Champaign County.


¶ 26    Affirmed.

---

[2]In light of our determination that the circuit court did not err in making this determination, we need not consider defendant's additional argument that Chounard's affidavit constituted new, material, noncumulative evidence.